SAMUEL HANO vs. JONATHAN BIGELOW & another.

Suffolk.　November 17, 1891. — January 7, 1892.

Present: ALLEN, KNOWLTON, MORTON, & LATHROP, JJ.

*Building Restrictions — General Scheme of Improvement.*

The owner of a triangular tract of land, bounded on one side by a wide avenue and on another by a railroad, opened a street through it from the avenue, and sold two lots, one on either corner of the avenue and street, without restrictions. Two years later he divided the remaining land into lots according to a plan, and conveyed them all subject to the restriction that first-class dwelling-houses only should be built thereon, except that, in case of the lot at the junction of the avenue and the railroad and the lot next to it on the avenue, the restriction was modified so as to permit the erection of a store on the lot on the railroad, and except that a rear lot on the railroad was sold without restrictions. *Held,* that a right enforceable in equity existed in favor of the several grantees to have no buildings except first-class dwelling-houses erected on any of the lots except on the lot on the avenue and railroad, and none upon that except a store or a first-class dwelling-house.

CONTRACT, to recover a deposit made by the plaintiff, under an agreement of the defendants to convey to him a parcel of land with a good and clear title, or, failing that, to refund to him the deposit. The case was submitted to the Superior Court, and, after judgment for the plaintiff, to this. court, on agreed facts, the substance of which appears in the opinion.

*E. L. Rand & F. B. Patten,* for the plaintiff.

*B. E. Perry & G. H. Perry,* for the defendants.

KNOWLTON, J. In 1866, one Lockey was the owner of a tract of land in Cambridge, nearly in the shape of a right-angled triangle, the boundary line which formed the hypothenuse of the triangle on the northeasterly side being the Fitchburg Railroad, North Avenue, a much travelled highway one hundred feet wide, lying on the west, and land of private owners on the south. Through this he opened a way called Roseland Street, running easterly to Beacon Street nearly at right angles to North Avenue, which cut off the point of the triangle on the southeast and crossed the Fitchburg Railroad. On October 15, 1866, he conveyed to the North Avenue Congregational Church a lot at the southwesterly corner of the tract, bounded northerly

by Roseland Street, and westerly by North Avenue. This deed contained no restrictions, and referred to an old plan of former owners, dated in 1851. On April 30, 1868, he conveyed to one Holman another lot on the opposite corner of North Avenue and Roseland Street, without restrictions, and without referring to any plan. This was lot No. 4 on the plan hereinafter mentioned. On May 19, 1868, he conveyed twelve lots, which included all the remainder of the tract except one small lot numbered 10, at the southeast corner, bounded on the Fitchburg Railroad and Beacon Street. These conveyances were made to various grantees, according to a plan of the lots dated April, 1868, which divided the tract, exclusive of the first lot sold to the church, into fourteen lots, some bounded on North Avenue, and some on Roseland Street. Each of these conveyances contained the following restriction : " The above lot is conveyed with the restriction that first-class dwelling-houses only, with their appurtenances, are to be erected upon the said premises." In the deed conveying lots No. 1 and No. 2, the restriction was modified by the following language : " Except that on lot numbered 1 a store may be erected thereon." The lots conveyed fronting on Roseland Street contained the further restriction, " that all buildings erected upon said premises shall be set back at least ten feet from the line of said Roseland Street." Lockey owned no other land in the vicinity, and afterwards, on May 28, 1869, he conveyed lot No. 10 without restrictions, and with a condition that the grantee, his heirs and assigns, should never close up Roseland Street where it crosses the lot into Beacon Street, and with permission to alter the course of Roseland Street through the lot so as to straighten it. The defendants are the present owners of the greater portion of lots Nos. 1 and 2, and have agreed to convey them to the plaintiff with " a good and clear title " to the same, or forfeit a deposit of $100 made by him.

The question in this case is whether the several conveyances of May 19, 1868, created a right which will be enforced in equity in favor of the several grantees to have no buildings except first-class dwelling-houses erected on any of the lots except lot No. 1, and none upon that except a store or a first-class dwelling-house.

It has often been held that, where an owner divides a tract of land into building lots, and, as a part of a general scheme for its improvement, inserts in the deeds of sale of all the several lots uniform restrictions as to the purposes for which the land may be used, such provisions inure to the benefit of the several grantees, who may enforce them in equity, each for himself against the others. *Whitney* v. *Union Railway*, 11 Gray, 359. *Parker* v. *Nightingale*, 6 Allen,. 341. *Jeffries* v. *Jeffries*, 117 Mass. 184. *Sanborn* v. *Rice*, 129 Mass. 387. *Payson* v. *Burnham*, 141 Mass. 547. In cases of this kind it is important to ascertain the purpose of the grantor in imposing the restrictions, — whether they are intended for his personal benefit, or for the benefit of the lot owners generally. His intention is to be gathered from his acts and the circumstances.

The fact that the grantor of this land had conveyed two lots without restrictions, one of them nearly two years before the plan was drawn cutting up the tract into lots, and the other in the same month that the plan was made, and apparently before he had perfected his scheme in regard to the sale of the remainder, is not very significant. On May 19, 1868, he was the owner of thirteen lots. Lot No. 1 was small, and in the angle made by the intersection of the Fitchburg Railroad with North Avenue. It would not materially affect his general plan to sell lots to be used only for the erection of first-class dwelling-houses to permit the erection of a store in that corner, close by the railroad tracks. Nor would it much affect the plan to retain lot No. 10, a small lot in the other angle at the junction of the railroad with Beacon Street, and afterwards sell it without restrictions. Neither of these was very well adapted to use in the erection of a first-class dwelling-house. All of the lots which were considered desirable for that use were sold by contemporaneous deeds to different parties, and the same restrictions as to the kind of buildings which might be erected were imposed on all. As the grantor owned no other land in the vicinity, it seems clear that the restriction was imposed on each lot for the benefit of the owners of all the others, and that it was a part of a general scheme for the improvement of the entire property.

The restriction on the lots on Roseland Street, requiring the houses to be set back ten feet from the street, was of the same

kind, although there was no occasion for it on North Avenue, on account of the great width of that street.

The deeds were recorded, and the purchasers of lots had constructive notice of all the incumbrances which appeared in them.

It follows that the defendants were unable to give the plaintiff a good title to the land which they agreed to sell, and, on the facts agreed, he is entitled to recover.

*Judgment affirmed.*