Susie C. Bacon & others *vs.* Augusta E. Sandberg & another.

Middlesex.   March 12, 1901. — June 19, 1901.

Present: Holmes, C. J., Lathrop, Barker, Hammond, & Loring, JJ.

*Easement*, Equitable restriction. *Equity Pleading and Practice*, Laches.

Where an owner divides a tract of land into building lots and as part of a general scheme for its improvement inserts in the deeds of sale restrictions as to the purposes for which the land may be used, if it sufficiently appears that the intent of the grantor was to benefit the lot owners generally, it is not necessary, in order that the restrictions should be enforceable, that they should be exactly the same in all the deeds, if the differences are not substantial. *Also*, the fact that two of the lots, one sold before the plan was made, and the other a very small one, were sold without restrictions is not inconsistent with a general scheme of the grantor imposing restrictions on the remaining lots.

In a suit to enforce an equitable restriction in the deed of the defendant, as to the place and manner in which he might build upon his lot, it appeared, that the defendant obtained a permit to build on May 9, and that the building was finished about June 10 or 12, that on May 17 a petition was circulated to stop the work and presented to the mayor of the city, that about May 20 one of the plaintiffs had a conversation with the defendant and objected to the building on the ground of restrictions, that on May 27 and June 1 letters complaining of the building were written to the defendant, that on June 5 or 6 the plaintiffs' attorney had an interview with the defendant in which the defendant said he would let the plaintiffs know in a short time whether he would remove the building or not, that the building was not removed, and on June 14 the bill was filed. *Held*, that there was nothing in these facts to show unreasonable delay on the part of the plaintiffs in bringing their bill, or anything showing either actual consent or passive acquiescence on their part, and that the defence of laches was wholly unsupported.

It appears to be settled in this Commonwealth, that a plaintiff is not prevented from enforcing in equity a building restriction by the fact that he has not objected to a violation of the restriction by some one in the neighborhood other than the defendant. But, when the plaintiff has violated the restriction himself, the question whether he is entitled to relief depends largely on whether the plaintiff's breach of the restriction was so material and substantial as to enable the court to say that it ought not to interfere in his behalf.

In a suit to enforce an equitable restriction in the deed of the defendant, that no building or structure should be placed within thirteen feet of a certain street, it appeared, that the defendant had put up a one story building the whole of which was within the prohibited thirteen feet, and that the plaintiffs had violated the same restriction in their own deeds by projecting from their respective houses bay windows, piazzas and steps into the restricted space. *Held*, that, although the plaintiffs could not invoke the aid of a court of equity to prevent the defend-

ant from erecting a piazza, bay window or steps extending into the restricted space, the building of a separate house in this space was something which they had not done, and they were entitled to a decree ordering the defendant to remove the structure thus erected by him.

LATHROP, J.   This is a bill in equity, filed June 14, 1898, in the Superior Court, to enforce certain restrictions contained in a deed to one Rundstrom, whose title the defendant Sandberg has.   The last named defendant is a tenant of Sandberg.

The facts are as follows: In 1887, one Clark, as trustee, who was the owner of a large tract of land in Everett on one side of Main Street, caused it to be divided into lots, with streets running through it, and filed a plan of the same in the registry of deeds.   Between 1887 and 1894, Clark sold all of these lots, and has no land remaining in the vicinity.   The lot now owned by Sandberg was conveyed subject to four restrictions: 1. " That no building or structure of any kind shall be placed on the premises at any time within thirty years after the date of this deed within thirteen feet of Beacon Street."   2. " That no house shall be built on said granted premises which shall be less than two stories in height exclusive of cellar and attic, or which shall cost less than $2,000."   3. " That no building and no part of the same on said granted premises shall be used for manufacturing or mechanical purposes or occupations."   4. " That no livery stable or pig pen, and no offensive structure of any kind shall be built or maintained on said granted premises, but a private stable for the horses of the occupants of said granted premises may be placed on the rear part thereof, no portion of such stable to be less than fifty feet south of the southerly line of said Beacon Street or less than sixty feet east of the easterly line of said Main Street."

The defendant Sandberg put up a one story building on the lot conveyed to her, all of which is within thirteen feet of Beacon Street, and which is occupied as an office by the last named defendant, who is a real estate dealer, an insurance agent, a carpenter and a plumber.   In the Superior Court the plaintiffs obtained a decree ordering the defendants to remove this structure; and the defendants appealed.

1. The first defence set up is that as the common grantor sold out all her interest in the lots, the plaintiffs cannot maintain this

bill unless there was a general scheme for the improvement of the property, and the restrictions were uniform.

While it has been often held that where an owner divides a tract of land into building lots, and, as a part of a general scheme for its improvement, inserts in the deeds of sale of all the several lots, uniform restrictions as to the purposes for which the land may be used, such provisions inure to the benefit of the several grantees, who may enforce them in equity, yet the criterion in this class of cases is the intent of the grantor in imposing the restrictions, whether they are intended for his personal benefit, or for the benefit of the lot owners generally; and his intention is to be gathered from his acts and the attendant circumstances. If this sufficiently appears, the fact that as to some lots there are no restrictions simply takes those lots out of the general scheme; and it is not necessary that the restrictions should be exactly the same in all the deeds. *Hano* v. *Bigelow*, 155 Mass. 341. *Hills* v. *Metzenroth*, 173 Mass. 423.

In the case at bar it appears that two lots, Nos. 1 and 2, were sold without restrictions. It however appears that Lot 1 was sold before Beacon Street was laid out or the plan made; and the lot is on Main Street, and not on Beacon Street. Lot 2 ran back only twenty-two feet from Beacon Street, and would have been useless if restrictions had been placed upon it. The other lots are seventy-five feet deep from Beacon Street. We cannot regard the fact that these two lots were sold without restrictions as inconsistent with the general scheme of the grantor. See *Hano* v. *Bigelow*, 155 Mass. 341, 343, where also two lots were sold without restrictions.

Then it is urged that the restrictions on the other lots differ from those imposed on the lot in question. The facts are that as to a large number of lots the restrictions are the same as on this lot, except that in the third restriction, the words "trade or manufacture" are substituted for "manufacturing or mechanical purposes." Bucknam Street bounds all the lots on the east, and there is a restriction as to the lots bounding on that street, requiring the houses to be built thereon to be set back thirteen feet. There are two lots bounding on Beacon Street and Bucknam Street. The deed of one lot mentions a stable and that of the other does not. But these differences are not essential, if

enough appears to show the general intent of the grantor.  The justice of the Superior Court found on the evidence in favor of the plaintiff; and we see no reason to doubt the correctness of his finding.  *Hano* v. *Bigelow, ubi supra.*

2. The next defence is that the plaintiffs were guilty of laches. The defendants obtained a permit to build on May 9.   The evidence does not show clearly when the building was begun, but it was finished about the tenth or twelfth of June.  On May 17, a petition was circulated to stop the work, which was presented to the mayor of Everett, and denied.  About May 20, one of the plaintiffs had a conversation with the last named defendant, and objected to the building on the ground of the restrictions.  On May 27, letters were written to the last named defendant and to the husband of the first named defendant, and on June 1, to both the defendants, all complaining of the building.  On June 5 or 6, an interview was had by the plaintiffs' attorney with Sandberg; and on this occasion she said she would let the plaintiffs know in a short time whether she would remove the building or not.  She did not do so, and on June 14 the bill was filed.

We see nothing in these facts to show any unreasonable delay on the part of the plaintiffs in bringing this bill, or anything showing either actual consent or passive acquiescence on their part.  *Linzee* v. *Mixer*, 101 Mass. 512, 527, 528.  *Attorney General* v. *Algonquin Club*, 153 Mass. 447, 453.  *Harrington* v. *McCarthy*, 169 Mass. 492.

3. Lastly, it is urged in defence, that the plaintiffs cannot come into a court of equity for redress, because they have infringed the restrictions, by allowing projections from their houses into the space of thirteen feet between the houses and the line of Beacon Street.  These projections consist of bay windows, piazzas and steps.

It appears to be settled in this Commonwealth that a plaintiff is not prevented from obtaining relief by the fact that he has not objected to a violation of a restriction by some one in the neighborhood other than the defendant.  *Linzee* v. *Mixer*, 101 Mass. 512, 531.  *Payson* v. *Burnham*, 141 Mass. 547, 556.  See also *Knight* v. *Simmonds*, [1896] 2 Ch. 294; *German* v. *Chapman*, 7 Ch. D. 271, 278.

When a breach of a restriction or of a covenant has been committed by the plaintiff, the case stands somewhat differently. Whether a court of equity will or will not aid the plaintiff in such a case depends largely upon the question whether there has been such a material and substantial breach as will enable the court to say that it ought not to interfere. Kerr on Inj. (3d ed.) 431. *Western* v. *MacDermot*, L. R. 1 Eq. 499; and L. R. 2 Ch. 72. *Jackson* v. *Winnifrith*, 47 L. T. (N. S.) 243. *Chitty* v. *Bray*, 48 L. T. (N. S.) 860.

In the case before us it may be assumed that the plaintiffs, by their conduct in respect to their own houses, could not invoke the aid of a court of equity to prevent the defendants from erecting a piazza, bay window or steps extending into the restricted space; but the building of a separate house in this space is something the plaintiffs have not done, and as this building violates the first restriction, we see no reason why the plaintiffs should not be allowed to enforce their rights in equity, without considering whether the defendants have not also violated some of the other restrictions. *Evans* v. *Mary A. Riddle Co.* 43 Atl. Rep. 894.

*Decree affirmed.*

*T. Weston, Jr.*, for the defendants.
*A. P. Carter*, for the plaintiffs.