GLINES ET AL., RESPONDENTS, *v.* MATTA ET AL., APPELLANTS.

## APPEAL from the District Court of San Juan, Section 1.

No. 890.—Decided April 23, 1913.

INJUNCTION—CHANGE OF VENUE—SERVITUDE.—The action of injunction brought by the plaintiffs implies an interest in the property in litigation very similar to an easement or servitude, therefore the plaintiffs had the right to have the issue tried in the judicial district of San Juan, in which the property in litigation is situated, and a change of venue to the judicial district of Humacao was not proper although the defendants are residents of that district and were summoned there.

ID.—BUILDING RESTRICTIONS—CONTIGUOUS OWNERS.—The owners of lots segregated from a tract of land which has been urbanized and the whole of which is subject to certain building restrictions which appear in the record of the property in the registry of property, may sue for an injunction to restrain other owners of such lots from violating said restrictions.

ID.—EQUITY JURISDICTION.—Although the courts of Porto Rico do not have equity jurisdiction as applied in the courts of England and the United States, nevertheless, when the Legislature enacted the Injunction Law it adopted a limited part of the principles of equity in force in the United States applicable to injunctions.

ID.—UNIMPORTANT VIOLATION OF RESTRICTIONS.—The violation by plaintiffs of the building restrictions imposed upon the lots in question is unimportant and does not constitute an open and manifest infraction thereof such as would prevent them from bringing this action of injunction.

ID.—LACHES—NOTICE.—When an action of injunction is filed within twenty days after notice to a party that he is violating the building restrictions imposed upon his lot and notwithstanding such notice he continues to build, it cannot be alleged that plaintiffs have been guilty of laches.

BUILDING RESTRICTIONS—SUBSEQUENT PURCHASERS.—Where a co-operative building association imposes certain restrictions regarding the construction of buildings upon land to be divided into building lots and such restrictions are set forth in the record of the deed to the whole tract in the registry of property and mentioned in subsequent deeds, all subsequent purchasers of lots are bound to respect them although no specific contract is made with respect to said restrictions in the conveyance to them.

RESTRICTIONS UPON PROPERTY.—The courts are bound to require compliance with restrictions imposed upon property so long as those restrictions are not contrary to law and do not cause any real hardship.

The facts are stated in the opinion.

Messrs. *Aponte & Aponte* for appellants.

Messrs. *Joseph Anderson, Jr.,* and *Damián Monserrat, Jr.,* for respondents.

MR. JUSTICE WOLF delivered the opinion of the court.

Somewhere in the year 1903 a company was formed called The People's Cooperative Building, Savings and Loan Asso-‚ ciation of Porto Rico, which bought a large tract of land in that part of Santurce known as ''Miramar,'' the principal idea of such company being to lay out the tract in city lots for residence purposes, the said city lots to be subjected to certain regulations to which purchasers of said lots would have to submit. At a meeting of this company on April 28, it was agreed that whosoever the purchaser of a lot might be he should submit, and be bound to said company, for the responsibility of construction and the making of streets, sidewalks, sewerage and piping in proportion to the, cost of same, and such works might be undertaken by the company whenever the purchasers of the lots situated in the same street requested it, or before such requests if the company deemed it expedient.

The following specific agreement was likewise entered into, namely, no building, structure, balcony, bay-window or other construction except steps and staircases · shall be erected on these lots at a distance of less than three meters from the front of said lots on the streets on which it is situated.

The company reduced .this agreement to the form of a deed and recorded the latter in the registry of property, and as each lot came to be recorded in the registry a reference was made to such agreement as emanating from and imposed by the said company. Some lots were sold by the company thereafter making the said reference but without a special restrictive clause, and others were sold upon condition of submitting to the plan agreed upon, and this went on until at the suit of one of the stockholders the company was ordered dissolved and the property ordered sold without charge or encumbrance (*sin cargo o gravamen alguno*), and among the lots ultimately sold in this manner was lot No. 137, over which the contention in this suit arises.

This lot was sold at public auction to the Sucesores de A. Mayol·y Cía., and they conveyed to Francisco del Valle, Jr., who in turn conveyed to Doña Concepción Matta free of all encumbrances, but subject to the condition or so-called servitude to which we have alluded, and also subject to contribution for the improvement of streets, sewerage, etc. The condition or restrictive agreement which appears in the deed to Doña Concepción Matta only by way of recital and as part of the description was a specific covenant in the deed made to Don Francisco del Valle, Jr., her immediate predecessor in title and appears as an encumbrance or charge upon the property in the proper records of the registry of property.

The defendants and appellants in this case are Concepción Matta and Miguel Zalduondo. Both are residents of Fajardo and each was served with process in this case in the judicial district of Humacao of which Fajardo forms a part.

On or about August 3, 1911, Miguel Zalduondo, as attorney in fact for Mrs. Concepción Matta, applied to the municipality of San Juan for permission to construct a certain edifice of concrete upon the lot above described belonging to his principal and obtained the necessary permission. Thereupon the defendants in their several capacities began to construct two garages on said property, erecting said garages sheer up to the building line. At an early stage of the work the defendant Zalduondo was notified by one or more of the complainants through their agents that such construction was in violation of the restrictive agreement, which restrictive agreement is the one heretofore set forth. The building was, however, continued and practically finished when the complainants filed their complaint. To this complaint the defendants demurred and likewise filed a motion in proper form to transfer the case to the District Court of Humacao, within which district both defendants reside. The court overruled both the demurrer and motion for transfer.

The complainants are the owners or occupants of con-

tiguous or adjoining lots and alleged that the agreement had
been violated by the defendants and, after answer and a trial,
obtained a permanent injunction.    The judgment prohibited
the defendants from prosecuting the work of the building in
any way and ordered the destruction of the part that had
been erected so as to leave the lots in the same condition in
which they were before the commencement of the building of
such garages.

Six are the grounds of error alleged.

## I.

*Error in denying the motion for a change of venue.*

Appellants allege that the action of injunction is directed
against the person and that the action in this case is espe-
cially personal inasmuch as it sought to restrain a breach of
a covenant.    Section 75 of the Code of Civil Procedure, among
other things, provides:

"Actions for the following causes must be tried in the district in
which the subject of the action, or some part thereof, is situated, sub-
ject to the power of the court to change the place of trial, as provided
in this code:

"1. For the recovery of real property, or of an estate of interest
therein, or for the determination in any form of such right or interest,
and for injuries to real property."

What complainants are really alleging is an infraction
of their rights by reason of their possession of a piece of
real estate.    They are maintaining their right, if not clearly
to an easement or servitude to something akin thereto.    They
are maintaining a right to have three meters of space free
of structures in the part of Miramar where they are located.
They are maintaining an interest in land we think within the
letter and spirit of section 75, and if one of their main con-
tentions be sound that interest followed the land rather than
the person.    Such was the issue between the parties and re-

spondents had the right to have the issue tried in San Juan. It is true that the defendants reside in the district of Humacao, but the subject of the cause of action is evidently in San Juan. In the case of *Veve et al.* v. *The Fajardo Development Company,* 15 P. R. R., 563, cited by appellants, the facts are that the defendant was about to commit alleged unlawful acts on the alleged land of the complainants, such as the laying of railroad tracks. Service was obtained on the defendant in the district of Ponce and that court had jurisdiction of the defendant. The proceedings were preliminary and no motion for change of venue had been made, and the District Court of Ponce expressly reserved the question of a subsequent transfer. The District Court of Ponce, even supposing an interest in land had been involved—upon which point we express no opinion—having jurisdiction of the defendants, clearly had jurisdiction to try the case until a change of venue was asked. If the breach of the covenant in the case before us be regarded as an injury to property, as perhaps it may, the authorities clearly sustain the viewpoint of the respondents. *Drinkhouse* v. *Spring Valley Water Works,* 80 Cal., 308; *Marysville* v. *North Bloomfield Gravel Mining Company,* 66 Cal., 343.

## II.

### *Error in overruling the demurrer of the defendants and appellants.*

This is an action of injunction and the appellants allege that the court was in error in not dismissing the complaint inasmuch as the contract was one made, if at all, between the land company and the predecessors in title of the defendants, and that there is no *nexus* or privity of relation between the complainants and defendants in this case. They admit that in the United States there are decisions which show that a complaint of this kind can be begun in the name of a third person who did not intervene in the ori-

ginal contract, but they assert that all these decisions were
rendered in equity and that equity jurisprudence is not ap-
plicable in the courts of Porto Rico.

Appellants also cite section 1224 of the Civil Code, which
limits the effect of a contract to the parties and their heirs,
and state that the only person who could bring this action
was The Popular Cooperative Company.

The Law of March 8, 1906, page 86, among other things,
provides:

"Section 1. An injunction is a judicial command in writing issued
under the seal of a court, directing a person to refrain from doing
or permitting to be done by others under his control a particular act
which violates a right of another.

"Section 2. The Supreme Court or any judge thereof may issue
injunctions to enforce the jurisdiction of said court, under the regu-
lations prescribed by law. And the judges of the respective district
courts may issue injunctions in all cases in which such process may be.
properly issued."

The primary question for us to consider is whether any
right of the complainants was violated. The object of the
Cooperative Company, as its name implies, was to secure
for its members the urbanization of the part of the land
known as "Miramar." It was the idea that the association
and each successive owner of land should be bound to pre-
serve that cooperative relation. It was a mutual right to
create and preserve certain conditions in all the land, and
every purchaser took with notice of these conditions. No
one was bound to buy land in Miramar and if he did he was
bound from the registry to know of the original plan made
by the members of the company and their successors. People
were induced to purchase under the theory that a certain
portion of the land of each lot was to be free of any building
construction. Each owner of land, therefore, even if he did
not have a distinct easement or servitude or right of way over
the land, had an interest in keeping the three meter space
clear of the forbidden building constructions.

Every owner had a common right to have this space reserved. It was in the nature of a tenancy in common to all the property in Miramar, and this right belonged not only to the original parties to the contract but also to every owner in that district. Any purchaser acquired a right over the land of every other owner and, having such a right, he could enforce it. Section 1 of the Injunction Law.

The courts of Porto Rico do not have general equity jurisdiction as the same is applied in the courts of England and the United States, but they have by the Injunction Law jurisdiction to prevent the violation of rights. In adopting the Law of Injunction the Legislature necessarily adopted at least a limited part of the law in regard thereto which is in force in the United States. If no other principle prevail we think the defendant, Concepción Matta, would be estopped to deny the rights of the complainants in this regard.

In section 1342 of Pomeroy's Equity Jurisprudence the following, applicable to the case at bar, is set forth:

"Section 1342. *Restrictive Covenants Creating Equitable Easements.*—This doctrine has already been examined, and it has been shown that restrictive covenants in deeds, leases, and agreements limiting the use of land in a specified manner, or prescribing a particular use, which create equitable servitudes on the land, will be specifically enforced in equity by means of an injunction, not only between the immediate parties, but also against subsequent purchasers with notice, even when the covenants are not of the kind which technically run with the land. The injunction in this class of cases is granted almost as a matter of course upon a breach of the covenant. The amount of damages, and even the fact that the plaintiff has sustained any pecuniary damages, are wholly immaterial. In the words of one of the ablest of modern equity judges: 'It is clearly established by authority that there is sufficient to justify the court interfering if there has been a breach of the covenant. It is not for the court, but the plaintiffs, to estimate the amount of damages that arises from the injury inflicted upon them. The moment the court finds that there has been a breach of the covenant, that is an injury, and the court has

no right to measure it, and no right to refuse to the plaintiff the specific performance of his contract, although his remedy is that which I have described,' namely, an injunction.''

## III AND IV.

*Error in considering the restrictions as privileged and as not abandoned by reason of the dissolution of the company and its plans and by reason of the orders of the court in this regard.*

Appellants maintain that the restrictions on property are not favored. Nevertheless, where the intention is clear to create an equitable servitude or restrictive agreement of this nature the courts should generally enforce them if they are not against public policy and work no real hardship.

The mere dissolution of the company, as we have seen, did not effect the rights of the owners among themselves. It makes no difference that in selling a large number of the lots after the company was thrown into liquidation the court ordered that the property should be sold free of all encumbrances and charges. An examination of the record and the facts shows that what the court had in mind were the previous mortgages and encumbrances that existed on the land and to relieve any purchaser of any responsibility for any financial transaction of the cooperative society. It was not the object of the suit of the stockholder to relieve the land of the restrictive agreement but only to have a liquidating and an accounting of all the property of the corporation. If it had been the design to put an end to this restrictive agreement the various owners of lots should have been made parties and the object stated in the complaint. Moreover we doubt the power of the court in rendering its orders for sale to decree the extinction of these equitable servitudes or rights. Such an order would have been *coram non judice*, and such was not the idea of the court.

## V.

*Error of the court in not considering the restrictive agreement as abandoned or waived by reason of the acts of the parties.*

The theory of the appellants is that as the complainants herein, or some of them, had put up fences of various natures they had waived or abandoned or were estopped from coming into court as they did not come in with clean hands. The court below was of the opinion that there had been no substantial violation of the building restrictions and that, with the exception of a slight projection and the building of these fences, the complainants had all complied with such agreement. The court was of the opinion, and we agree therewith, that the violations were of no particular importance and did not constitute such an open and manifest transgression as would prevent complainants from seeking the relief of injunction, and the theory of the court is supported by the case of *Deacon* v. *Sadberg,* 179 Mass., 396.

## VI.

*Error in not dismissing the injunction by reason of the delay of respondents, or laches, and by reason of the fact that the building was finished when the complaint was filed.*

The proof shows that the defendants were notified by the complainants or their agents that they were violating the building agreement at a moment when the walls of the building had progressed a very short distance and within twenty days thereafter the complaint was filed. Under these circumstances we see no laches on the part of the respondents.

With regard to the fact that the building was nearly completed when the complainants began their suit, we think that the fact that the defendants were bound to know of the re-

strictive agreement, that they were notified when the building had progressed but a short way and still persisted in going on with the building, would prevent them from complaining of the action of the court.   However, as the defendants must have known from the registry that buildings were not to be put up in the three-meter space and still erected these garages they have no one to blame but themselves.   If it were the desire and the intention of the other owners of the property to put up a sidewalk within this space of three meters, as the original agreement provided, none of the things that the complainants have done would interfere with such sidewalk but the garages constructed by the defendants being next to the street would so interfere.

We find no error in the judgment and the same must be affirmed.

*Affirmed.*

Chief Justice Hernández and Justice MacLeary concurred.

Justices del Toro and Aldrey did not take part in the decision of this case.