MOORFIELD STOREY & another, trustees, *vs.*
CHARLES N. BRUSH.

Essex.   March 8, 1926. — May 27, 1926.

Present: BRALEY, CROSBY, PIERCE, & WAIT, JJ.

*Equitable Restrictions.   Equity Pleading and Practice,* Parties.   *Equity Jurisdiction,* To enforce equitable servitude, Laches.

A restriction in a deed of land in a neighborhood of high class summer residences, inserted for the purpose of protecting land in the neighborhood held by the grantor in order that he might thereafter sell it for residential purposes, and reading, "No building shall be erected or placed on the granted premises other than single private dwelling houses and private garage or private stables connected therewith, and other than greenhouses and structures for use in connection with gardening or with greenhouses," was violated when the grantee built upon the land a structure one hundred and thirty feet long, the ends consisting of cottages of one and of one and one half stories respectively with gable roofs, and the middle portion being a one story garage with a flat roof and space for five automobiles, the garage being separated from each cottage by a brick fire proof wall with no openings and each cottage being arranged for one family only, if the cottages were intended as residences for the families of a chauffeur and of a coachman employed by the grantee, whose house was on another tract not a part of the grantor's estate, and neither of the employees used the garage for his own pur-

poses: the two cottages separated by the garage constituted a single building designed for and actually occupied by two families, and the garage was not such a garage as was described in the restriction in that it was not connected with any single private dwelling house erected on the premises.

The grantor in the deed above described was not precluded as a matter of law from maintaining a bill in equity to restrain violation of the restriction merely by reason of the fact that there was no general plan of the plaintiff's tract of land on record or that the restrictions in deeds to different purchasers, although similar, were not identical, or that he had sold two strips of land too narrow to permit the erection of dwelling houses to a grantee in whose deeds restrictions were not included.

In the suit above described, it appeared that before the time of the commencement of the suit the grantor had conveyed to different grantees all his tract and that he still held mortgages upon some of the tracts, and it was *held*, that he still had such an interest in the subject matter of the suit that he had a right to enforce the restrictions for the benefit of his grantees.

A decree, admitting as a party plaintiff one who had received from the original plaintiff a part of the tract in question by a deed containing restrictions substantially like those in the deed of the defendant, was proper.

It appeared in the suit above described that the plaintiff had not understood the character of the structure contemplated by the defendant; that the day before work on the structure began its true character was called to his attention; that six days later he notified the defendant by letter that the building he was erecting was in violation of the restrictions in the deed under which he claimed title and that he proposed to enforce observance of such restrictions; and that about nine months later, after the entire structure, involving an expenditure of $22,700, had been completed, the bill in equity was filed. *Held*, that the plaintiff neither expressly nor impliedly consented to the acts of the defendant; that there was nothing to show that the plaintiff waited an unreasonable time before bringing the suit; and that he was not barred by laches.

BILL IN EQUITY, filed in the Superior Court on May 25, 1922, to restrain the defendant from an alleged violation of an equitable restriction in a deed of the plaintiffs to him.

The suit was referred to a master. Material facts found by the master are stated in the opinion. The entire expenditure by the defendant for the structure erected by him was about $22,700. Both parties filed exceptions to the report, which are described in the opinion and which were heard by *Lummus*, J., by whose order there were entered interlocutory decrees sustaining the plaintiffs' exceptions and overruling the defendant's exceptions and a final decree

enjoining the defendant "from maintaining or using said building except as it may be converted into and used exclusively for a single private dwelling house or detached single private dwelling houses or private garage or private stables connected with such a single private dwelling house or single private dwelling houses erected or placed on the premises covered by said restriction as described in the bill of complaint, or a greenhouse or structure for use in connection with gardening or with greenhouses, or for more than one of said purposes;" and commanding the defendant "to remove the said building unless within six (6) months after entry of this decree said building shall be used exclusively for a purpose or purposes not in violation of said restriction" in the deed from the plaintiff.  The defendant appealed.

*G. R. Farnum,* (*F. H. Williams* with him,) for the defendant.
*J. N. Clark,* for the plaintiffs.

CROSBY, J.  This is a suit in equity to enforce restrictions in a deed of land from the plaintiffs to the defendant, the land being part of a large tract known as the Phillips Estate, originally owned by the plaintiffs as trustees, and situated in Swampscott in this Commonwealth.

The deed to the defendant contained the following recital: "The granted premises are granted subject to the following restrictions: No building shall be erected or placed on the granted premises other than single private dwelling houses and private garage or private stables connected therewith, and other than greenhouses and structures for use in connection with gardening or with greenhouses."

The master to whom the case was referred found that the defendant has erected on the land a structure, described by the master as follows: "This structure has the outward appearance of one long low building erected with one end toward Little Point Road and extending along the easterly line of the premises which separates them from the adjoining estate of Mrs. Fielding.  It consists of three portions, the end toward Little Point Road being a one and one half story cottage with a gable roof; the middle portion being a one-story garage with a flat roof and having spaces for five automobiles, each space having a separate door, and the further

end consisting of a one-story cottage part of which has a flat roof continuous with the garage and the remainder a gable roof. The garage is separated from each cottage by a brick fireproof wall with no openings . . . . Each cottage is arranged for one family only. The entire structure is about one hundred and thirty feet long." The master further found that one of these cottages was intended by the defendant to be used by his chauffeur and his family, and the other by the defendant's groom or coachman and his family; but that neither of these employees owns automobiles or makes any use of the garage except in the course of their employment by the defendant; that the garage is designed and intended to be used solely for the convenience of the defendant and his family in their occupancy of his estate, which is situated near the end of Little Point on the shore, but is not a part of the land originally held by the plaintiffs as trustees and known as the Phillips Estate. The master further found that the land so held by the trustees is situated in that part of Swampscott called Little Point, and except for certain vacant land owned by the plaintiffs and others is devoted to residences of the same general character as that of the defendant, each being occupied by a single family. It is described by the master as a neighborhood of high class summer residences.

1. At the outset the question is presented, whether the structure erected by the defendant violates the restrictions. The master found that "It was the purpose of the complainants in inserting this restriction in the deed to the respondent to protect the remaining land held by them in this neighborhood in order that they might hereafter sell it for residential purposes"; that "Solely as a conclusion from the foregoing findings, I find that the two portions of the structure erected by the respondent which constitute the two cottages are each single private dwelling houses within the meaning of the restrictions in the deed from the complainants to the respondent." The plaintiffs filed three exceptions based on corresponding objections, which in different form raise the question of the validity of this finding. An interlocutory decree has been entered sustaining

these exceptions. Upon the undisputed facts it appears that the two cottages separated by the garage constitute a single building or structure. The structure being designed for and actually occupied by two families is manifestly a violation of the restrictions. The description of the structure and its physical appearance as shown by the photograph accompanying the record make it plain that but one building has been erected and that the two parts thereof designed for cottages are not each "single private dwelling houses" within the meaning of the restrictions. It follows that the plaintiffs' exceptions to the master's report were rightly sustained.

2. The master found that "so much of the structure as comprises the garage is not such a garage as is described in those restrictions, in that it is not connected with any single private dwelling house erected upon the premises within the meaning of the restrictions . . . ." The defendant's exception to this finding cannot properly be sustained; it was amply warranted by the other findings and the undisputed facts.

3. It is agreed by the parties that no general plan showing the whole of the tract is on record, but in each instance there was filed a plan showing the particular parcel conveyed, without any reference to a general plan and without any reference thereon to restrictions. Two of the deeds from the plaintiffs contained no restrictions. In the deeds of all the other conveyances made by them, were not only restrictions substantially the same as those described in the deed to the defendant, but others in addition thereto. The first deed containing no restrictions was dated February 14, 1920, and conveyed to the grantee (who already owned adjacent land) a strip about twenty-five feet in width and about one hundred and eighty-one feet long. The other deed without restrictions was dated November 17, 1920, and conveyed to the same grantee to whom the trustees had conveyed the first narrow strip another parcel about twelve and a half feet wide and about two hundred and five feet long which paralleled the strip first conveyed. Upon all the evidence a finding was warranted that the land was divided into building lots, and that the restrictions were imposed as a part of a

general scheme for the benefit of the several grantees. The master·expressly found that it was the purpose of the plaintiffs in inserting the restrictions in the deed to the defendant to protect the remaining land held by them in this neighborhood, in order that they might thereafter sell it for residential purposes. It is not of great significance that the two named strips were sold without restrictions, as it may be that neither of them was wide enough for the erection thereon of a desirable dwelling house. The fact that a general plan was not filed and that the restrictions in the different deeds, although similar, are not identical, is not conclusive, so long as it appears that it was the general intent of the grantors to impose restrictions for the benefit of lot owners generally. *Hano* v. *Bigelow*, 155 Mass. 341. *Bacon* v. *Sandberg*, 179 Mass. 396.

4. Before the final decree was entered in the present case, the plaintiffs had conveyed to different grantees all the land originally owned by them as trustees, described in paragraph one of the bill; but they held in trust other land in Swampscott located at a distance from the large tract above referred to. As trustees, although no longer owners of any part of said original tract, they still had such an interest in the subject matter of this suit that they have a right to enforce the restrictions for the benefit of their grantees. *Riverbank Improvement Co.* v. *Bancroft*, 209 Mass. 217, 223. Also, the plaintiffs as holders of mortgages upon certain of the lots sold by them to secure unpaid purchase money have a direct interest in the subject matter of the·suit. *Stewart* v. *Finkelstone*, 206 Mass. 28, 34, 35.

5. The intervening petitioner, McDonald, by deed from the plaintiffs of a large part of the original tract, conveyed to him subject to restrictions substantially like those in the deeds from the plaintiffs to the defendant, was a party in interest and had a right to enforce the restrictions. The defendant's appeal from the order allowing the motion of McDonald to intervene and become a party plaintiff cannot be sustained. *Whitney* v. *Union Railway*, 11 Gray, 359. *Hopkins* v. *Smith*, 162 Mass. 444. *Sprague* v. *Kimball*, 213 Mass. 380,·382.

6. The question remains, whether the right of the plaintiffs to maintain the present suit is barred by laches. While the testimony of the plaintiff Storey and that of the defendant are conflicting, the master found that "It is plain that Mr. Storey did not understand that Mr. Brush contemplated the erection of a garage of the character and for the purposes described in this report." It appears that on August 10, 1921, the day before work on the present structure began, it was called to the attention of the plaintiff Storey. This was the first information which either of the original plaintiffs had of the proposed erection of the building. On August 16, 1921, within five days after the work began, the plaintiffs notified the defendant by letter that the building he was erecting was in violation of the restrictions in the deed under which he claimed title, and that they proposed to enforce observance of such restrictions. The master found that there was no evidence that the plaintiffs at any time changed their attitude as stated in the letter of August 16, 1921.

Upon these findings, it is obvious that the plaintiffs neither expressly nor impliedly consented to the acts of the defendant, nor is there anything to show that the plaintiffs waited an unreasonable time before bringing this bill. *Linzee* v. *Mixer,* 101 Mass. 512. *Bacon* v. *Sandberg, supra. Stewart* v. *Finkelstone, supra.*

The interlocutory and final decrees should be affirmed, with costs of the appeal.

*Ordered accordingly.*