ELLIOT ET AL. *v.* KEELY ET AL.

[No. 18,141.   Filed April 26, 1951.   Rehearing denied
May 25, 1951.   Transfer denied July 20, 1951.]

*Harry E. Vernon,* of Goshen, for appellants.

*Frank J. Treckelo;* and *Church & Chester,* both of Elkhart, for appellees.

MARTIN, J.—This is an appeal from an action brought by the appellees against the appellants for a permanent injunction and damages. The judgment of the court granted the injunction and awarded damages in the sum of $10.00.

The errors relied upon by the appellants for reversal, which are not waived, are that the trial court erred in overruling the demurrer of the appellants to the complaint, and that the court erred in overruling appellants' motion for a new trial.

The specifications for a new trial are that the decision or finding of the court is not sustained by sufficient evidence, and that the decision or finding of the court is contrary to law.

The appellants demurred to the appellees' complaint.

The appellants contend that unless all parties owning lots in said sub-division are joined as parties-plaintiff the defendants will be liable to a multiplicity of suits; that the defendants are not bound by the restrictive covenants in the deeds of their predecessors in title; that the complaint does not allege any facts against defendants which would entitle the plaintiffs to the relief prayed for; that the building mentioned in the complaint abuts on a state and United States high-

way and any restrictions of the reasonable use thereof would be contrary to public policy.

The complaint alleges that appellees owned property in an area protected by restrictions in conveyances, and by reason of such ownership, they had such a beneficial interest arising out of the restrictions as to entitle them to enjoin any violation thereof. Therefore, appellees were proper parties-plaintiff, and there was no defect of parties-plaintiff. *Bachman* v. *Colpaert Realty Corp.* (1936), 101 Ind. App. 306, 194 N. E. 783; *Sorrentino* v. *Cunningham* (1942), 111 Ind. App. 212, 39 N. E. 2d 473.

The appellants are bound by the restrictive covenants in the deeds of their predecessors in title. Such covenants are covenants running with the land, and are binding upon a purchaser of such real estate.

Appellees' complaint states a good cause of action against appellants. *Sorrentino* v. *Cunningham, supra.*

We are of the opinion that restrictions in conveyances limiting the use of said property to residential purposes are not unreasonable or against public policy because said property is adjacent to or abuts on a state and United States highway.

All objections to the sufficiency of a complaint not specified in a memorandum accompanying the demurrer are waived. *Fidelity, etc., Ins. Co.* v. *Purlee* (1922), 192 Ind. 106, 135 N. E. 385; *C. C. C. & St. L. Ry. Co.* v. *Gillespie.* (1933), 96 Ind. App. 535, 173 N. E. 708; Burns' 1946 Replacement, § 2-1007.

The demurrer to the complaint was properly overruled by the trial court.

On appeal, when the sufficiency of the evidence is questioned, we do not weigh the evidence, but we examine the record to see if there is any evidence, or any reasonable or logical inference which may be drawn from the evidence, which if be-

lieved by the court would sustain the findings and decision of the court. *Gamble* v. *Lewis* (1949), 227 Ind. 455, 85 N. E. 2d 629; *Butterfield* v. *Trittipo* (1879), 67 Ind. 338, 342; *Indiana Ins. Co.* v. *Handlon* (1940), 216 Ind. 442, 24 N. E. 2d 1003.

The record, when considered most favorable to the appellees, and with reasonable inference against the appellants, discloses that under date of January 22, 1949, the appellants, as grantees, received a deed to Lot No. 9 in Kime Place Addition. The appellant, Max D. Elliot, testified that he knew at the time of the purchase that there were certain restrictions in the deed restricting the use of any building erected thereon to residential purposes; that thereafter there was a building known as "The Barn" erected thereon; that he operated a restaurant on the lower ground floor of said building.

Mr. Elliot further testified that he had juke boxes on the ground floor of his building; that said juke boxes operated when a coin was placed in them. The building which was erected on Lot No. 9 was 30 x 40 feet, with a restaurant and soda fountain on the lower floor, also seats and a counter, and that high school students and other persons congregated there to dine. There were flood lights on the outside of the building which burned during darkness or after sundown. The restaurant was kept open every day until eleven or twelve o'clock at night, except Sundays when it was opened at four o'clock. The restaurant had a neon sign in front and was classified as "The Barn" and the building was built to serve soft drinks and food. It also had two living apartments upstairs, in one of which Mr. Elliot resided.

Mr. Elliot further testified that the deed to Lot No. 8, which was owned by the appellees, contained restrictions against the use of said lot for any other

than residential purposes. The evidence also shows that the appellees' deed to Lot No. 8 contained the same restrictions with the exception of the value of the residential building to be erected on said lot, which value was $4,000.00 instead of $2,500.00, otherwise the restrictions were the same in both deeds.

The evidence shows that Albert P. Kime and Perninah M. Kime, as owners, recorded on October 29, 1925, a plat of Kime Place, located in Concord Township, Elkhart County, Indiana, containing 124 lots, Lot No. 8 and Lot No. 9 being a part of said platted lots.

Mr. Albert P. Kime testified that he owned a tract of land containing 53 acres at Dunlap and decided to plat it into lots about 1925; that he placed the matter in the hands of one Mr. Sigerfoos, who was the Trustee and a realtor, to have the title quieted and the land laid out in lots; that the plat was recorded and Mr. Sigerfoos started to sell the lots; that he (Mr. Kime), was working on the railroad at the time and could not handle the matter; that he intended the property to be adapted to residential purposes after he platted it and required that covenants be placed in the deeds as he sold the separate and several lots.

Mr. Kime further testified that sometime after his farm was platted he and his wife made a deed to Jerome F. Keely and Gazelle Keely, which deed contained restrictions for residential purposes; that he also executed a deed to Alvertis Haley, containing the same restrictions. The evidence shows that Alvertis Haiey was the grantor of Lot No. 9 to the appellants. Mr. Kime testified he intended, when he platted the land, that it be laid out for residential purposes and that was his reason for including the covenants; that he did not give any deeds which did not contain the covenants. He further testified that he lived in the

addition on Lot No. 11 which was about 150 feet southeast of the appellants' property. He also testified that not all of the land was laid out in lots; that Mr. Sigerfoos owned some in the southwest corner and a Mr. Church owned some also; that there might have been between two and five acres not in the addition and which was unplatted.

Mr. Kime testified that the high school was on lots which were sold on contract after the addition was platted; that the high school and grade school each took more than one lot. Mr. Kime testified that he thought the restrictions were placed on all the land but no part of the lots occupied by the high school or grade school was used for residential purposes; that he thought all restrictions were alike because he had a copy and when he gave a deed he would take a copy to the abstracter's office and have him make a deed from the copy. In some of the deeds the purchasers were required to build a house costing not less than $4,000.00, while on others the purchasers were required to build a house costing not less than $2,500.00, because during the depression the lots laid there and did not sell. He testified that Mr. Sigerfoos suggested cutting the price of the lots, also the cost of building. Mr. Kime also recalled having executed some eight or ten deeds in which no covenants at all were placed.

The trial court made the following general findings:

"That on the 18th day of April, 1929, said Albert P. Kime and Perninah M. Kime executed and delivered to one Alvertis Haley, their Warranty Deed for said Lot Number Nine (9) as the same is known and designated on the recorded plat of Kime Place, a sub-division in Concord Township, in Elkhart County, in the State of Indiana, which deed was duly recorded in Deed Record 152, page 410, in the office of the Recorder of Elkhart County, Indiana; that on the 22nd day of January, 1949,

said Alvertis Haley conveyed said Lot Number Nine (9) to the defendants, Max D. Elliot and June L. Elliot, which deed was duly recorded by said defendants in Deed Record 187, page 187, in the office of the Recorder of Elkhart County, Indiana; that each of said deeds contains the following covenants and restrictions:

" 'Grantee hereby covenants and agrees as a part of the consideration for this conveyance that all lots in this addition have a prescribed building line, the foundation of the main building front wall on this lot shall not be less than twenty-four (24) feet from the front end of this lot.

" 'Grantee also covenants and agrees that as a part of the consideration of this conveyance no residence building erected shall cost less than Two Thousand Five Hundred ($2,500.00) Dollars.

" 'Grantee also convenants and agrees that as a part of the consideration of this conveyance, the above described real estate shall not be sold, rented, leased or mortgaged or encumbered in any other manner to any person or persons or corporations other than to Gentile, White American Citizens.

" 'Grantee also covenants and agrees that as a part of the consideration of this conveyance that the above described real estate shall not be used for any other purpose than home and residence purposes and shall not at any time be used in connection with a grocery store, gasoline filling station, public garage, ice house, dance hall, or dance pavilion, or for any other purposes than that of a home and residence.

" 'It is hereby mutually understood and agreed that the above and foregoing covenants and agreements shall be deemed covenants running with the land and binding and obligatory upon the grantee, her heirs, devisees, executors, administrators, grantees, assigns and successors in interest. It is understood and agreed that compliance with the above covenants and agreements and with each of them may be enforced by injunction by any interested person or persons, and that for the breach or violation of any covenants or agreement, the rights

of said grantee, her heirs, devisees, executors, administrators, grantees, assigns and successors in interest shall at the option of grantor's herein, or their heirs, revert back to the grantors or their heirs, in which case said real estate shall with all improvements, be surrendered to them without the repaying of said purchase price or any part thereof, and without repaying for any improvements placed upon the above described real estate.'

"That said above described lots of plaintiffs and defendants are parts and parcels of Kime Place, a subdivision in Concord Township, in Elkhart County, in the State of Indiana.

"That said sub-division was originally owned and platted by Albert P. Kime and Perninah M. Kime, and consisted of one hundred twenty-four (124) lots, and that the plat of said sub-division and the dedication thereof was recorded on the 25th day of October, 1929, in Plat Book Number 2, at pages 158-159, in the office of the Recorder of Elkhart County, Indiana.

"That at the time of the platting of said subdivision, said Albert P. Kime and Perninah M. Kime adopted a definite plan or scheme of development for the purpose of making said subdivision a desirable residential area, and as a part of said plan or scheme, they adopted certain covenants and restrictions to make said sub-division a strictly residential district, prohibiting the use of any lots in said sub-division for any purpose other than for home and residence purposes.

"That said Albert P. Kime and Perninah M. Kime proceeded to sell lots in said sub-division, and inserted said covenants and restrictions in the deeds of conveyance for such lots, and such deeds, containing the covenants and restrictions, were placed on record by the various purchasers, as such lots were sold.

"That at the time of trial of this cause, ninety (90) lots from said sub-division had been sold and conveyed, and that thirty-five (35) dwelling houses had been erected in said sub-division, in conformity with the covenants and restrictions contained in said deeds of conveyance.

"That only four of the deeds of conveyance given by said Albert P. Kime and Perninah M. Kime contained no covenants or restrictions, and that while some of the deeds containing the covenants and restrictions did contain a reverter clause, some did not, but as a whole, the covenants and restrictions against using said lots for any purpose other than for home and residence purposes, were contained in all of the deeds, except four; that of the four deeds containing no restrictions, three (3) of such deeds were for Lots. Numbered Fifty-seven (57), Seventy-one (71) and Seventy-three (73) in said sub-division, and that dwelling houses have been erected on each of said lots by the various owners of same, and that all three (3) of said lots are now being used solely for residence purposes; that the fourth deed containing no restrictions conveyed Lots Numbered Sixty-four (64) to Sixty-six (66), inclusive and Lots Numbered One Hundred Fourteen (114) to One Hundred Twenty-one (121), inclusive, all in said sub-division, to Concord School Township, and that said lots are now occupied and used for school purposes by a township school.

"That the grantees of the various lots in said sub-division accepted their respective deed, containing said covenants and restrictions, and recorded the same, and relied upon the covenants and restrictions contained in said deeds as a mutual compact between the various owners of the lots and lands in said sub-division.

"That said defendants had actual notice of said covenants and restrictions against the use of their property in said sub-division for any purpose other than for home and residence purposes.

"That the general plan or scheme of said Albert P. Kime and Perninah M. Kime to make said sub-division a strictly residential district has been substantially complied with, and that said general plan or scheme has not been abandoned, and that said general plan or scheme for the development of said sub-division has not been destroyed or abrogated by any radical change or departure from said plan or scheme.

"That the defendants did erect a building on their said lot, which they used for the purpose of conducting a restaurant business from April, 1949, until the time of the trial of this cause, in violation of the covenants and restrictions contained in their chain of title for said real estate, and that the defendants are now operating and will continue to operate said restaurant business upon said lot, in defiance of the rights of the plaintiffs and in violation of said covenants and restrictions, unless enjoined from so doing."

Without detailing all of the evidence, which would burden this opinion, suffice to say there is evidence and inferences which could be drawn therefrom sustaining the general findings of the trial court.

Where a common grantor opens up a tract of land to be sold in lots and blocks, and before any lots are sold, inaugurates a general scheme of improvement for such entire tract intended to enhance the value of each lot, and each lot subsequently sold by such grantor, is made subject to such scheme of improvement, there is created and annexed to the entire tract what is termed a negative equitable easement, in which the several purchasers of lots have an interest, and between whom there exists mutuality of covenant and consideration. *Bachman* v. *Colpaert Realty Corp., supra; Wiegman* v. *Kusel* (1915), 270 Ill. 520, 110 N. E. 884; *Abbot* v. *Steigman* (1928), 263 Mass. 585, 161 N. E. 596; *Storey et al.* v. *Brush* (1926), 256 Mass. 101, 152 N. E. 225.

The fact that a general plan was not filed and that the restrictions in the different deeds, although similar, are not identical, is not conclusive, so long as it appears that it was the general intent of the grantors to impose restrictions for the benefit of lot owners generally. *Storey et al.* v. *Brush* (1926),

256 Mass. 101, 152 N. E. 225; *Hano* v. *Bigelow* (1892), 155 Mass. 341, 29 N. E. 628; *Bacon* v. *Sandberg* (1901), 179 Mass. 396, 60 N. E. 936.

The appellants contend that since some of the deeds to the lots sold in said sub-division did not contain restrictions limiting the use of said lots for residential purposes there would be a failure of a general building scheme or plan for the development of a restricted residential sub-division, and that, therefore, the restrictions would become of no effect and might be violated by anyone, or at least could not be enforced by persons who were not the original grantors or their privies.

The court, in its general finding, found that there was a definite general plan or scheme of development for the purposes of making said sub-division a desirable residential area and as a part of said general plan or scheme they adopted certain covenants and restrictions to make said sub-division strictly a residential district, prohibiting the use of any lots in said sub-division for any purpose other than for home and residential purposes. The failure of the developer to include uniform restrictions in all deeds, or his failure to include any restrictions in one or more deeds, would not of itself take away all of the rights of the other purchasers to have the district maintained as a restricted residential district. If appellants' proposition is correct then a sub-divider might sell hundreds of lots for enhanced prices, upon the representation that the district was to be a restricted residential district, and then by his failure either through inadvertence or otherwise, to include such restrictions in one or more deeds, destroy the entire scheme or general plan for a restricted residential sub-division. We are of the opinion that a general plan or scheme

may exist, although some of the lots were sold without restrictions. *Bethea* v. *Lockhart* (Tex. Civ. App., 1939), 127 S. W. 2d 1029; *Putnam* v. *Ernst* (1925), 232 Mich. 682, 206 N. W. 527.

The appellants contend that only the original grantors can enforce the covenants contained in the deed in question and argue that the covenants were placed in the deed for the sole protection of the original grantors. This contention is not supported by the evidence, which clearly shows that the original grantors did adopt a general plan or scheme of development and restricted it to residential purposes. Such a restriction not only imposes a liability upon the grantee of each lot as between him and the grantor, but it gives him a right in the nature of an easement, which will be enforced in equity against the grantee of one of the other lots, although there is no direct, contractual relation between the two. Through the common character of the deeds the grantees were given an interest in a contractual stipulation which is made for their common benefit. *Evans* v. *Foss* (1907), 194 Mass. 513, 80 N. E. 587, and authorities there cited; *Bachman* v. *Colpaert Realty Corp., supra.*

Finding no reversible error, the judgment is affirmed.

Wiltrout, C. J., not participating.

NOTE.—Reported in 98 N. E. 2d 374.