Marie H. CORNER, et al.,
Appellants–Plaintiffs,

v.

Patrick D. MILLS, et al.,
Appellees–Defendants.

No. 20A03–9405–CV–191.

Court of Appeals of Indiana.

May 12, 1995.

William J. Cohen, Elkhart, for appellants.

Robert A. Pfaff and Robert C. Whippo, Chester, Pfaff & Brotherson, Elkhart, for appellees.

## OPINION

HOFFMAN, Judge.

Appellants-plaintiffs Marie H. Corner, et al., (plaintiffs) appeal from a judgment granted in favor of appellees-defendants Patrick D. Mills, et al., (defendants) in an action to declare certain restrictive covenants to real estate unenforceable. The relevant facts are summarized below.

In 1937, Perry and Florence Shupert purchased a tract of land located in Elkhart, Indiana. The tract was divided into 32 individual residential lots and named "Christiana

Acres." Between 1939 and 1941, four of the lots were sold to purchasers without restrictions. However, in 1942, Lot No. 11 was sold with the following restrictions attached:

"(a) All lots shall be known and described as residential lots, except residential building lots other than one detached single family.

(b) No building shall be erected on any residential building plot nearer than forty (40) [feet] to the front lot line, not nearer than six feet to any side set line.

(c) No residential structure shall be erected or placed on any building lot, which tract has an area of less than 10,000 square feet or a width of less than forty feet at the front of the building set back line, except that a residence may be erected or placed on a lot of odd size and constructed according to the City building ordinance.

(d) No noxious or offensive trade or activity shall be carried on upon any lot nor shall anything be done thereon which may be or become an annoyance or nuisance to the neighborhood.

(e) No persons of any race other than the white race shall use or occupy any building or any lot, except that this covenant shall not prevent occupancy by domestic servants of a different race domiciled with an owner or tenant.

(f) No trailer, basement, tent, shack, garage, barn or other outbuilding erected in the tract shall at anytime be used as a residence temporarily or permanently, nor shall any structure of a temporary character be used as a residence.

(g) No dwelling costing less than $3500.00 shall be permitted on any lot in the tract. The ground floor area of the main structure exclusive of one story open porches, and garages shall be not less than 480 square feet in the case of a one and one half two or two and one half story structure."

In the following years, two additional lots were sold, one with the above restriction attached and the other without it.

In 1946, the Christiana Acres tract was recorded. At that time, all owners of the lots were using their properties for residential use only. Also, every lot owner joined in the recording. However, no restrictions were included in the tract record.

Thereafter, the next 13 lots were conveyed. Some of these lots included restrictions similar to the ones above. Others had certain residential restrictions but no racial covenants. Also, one lot was conveyed "subject to restrictions of record." Another was conveyed with restrictions against conducting "noxious or offensive trade[s] or activities."

Currently, there are two vacant lots in Christiana Acres. The remaining lots are being used and have been used since the initial recording for residential purposes only. At all times relevant to this dispute, every lot in Christiana Acres has been zoned by the City of Elkhart as R–1 Single Family Residential.

Christiana Acres subdivision abuts Cassopolis Road, a commercialized thoroughfare in Elkhart. Plaintiffs own lots in the subdivision on or near this street.[1] In March 1993, the plaintiffs decided their properties would be more valuable if used commercially. Hence, they filed a complaint in the Elkhart Superior Court for declaratory relief seeking to have the restrictive covenants on their properties lifted. Defendants responded and filed a counterclaim seeking, *inter alia*, enforcement of the covenants. After conducting a hearing, the trial court entered findings of facts and conclusions of law and upheld the residential restrictions on Christiana Acres. This appeal ensued.

The sole consolidated issue on appeal is whether the trial court erred in enforcing the restrictions attached to the properties in Christiana Acres.

 A trial court's judgment based on findings of fact and conclusions of law will be reversed on appeal only if the findings are clearly erroneous. A judgment is clearly erroneous when it is unsupported by the findings and conclusions. Findings of fact

---

1. At issue here are Lots 1, 2, 17, 18–22 and 27–32. Lot 22 does not abut Cassopolis Road but does border Lots 20 and 21 located on the road. Similarly, Lot 17 is directly behind Lots 18 and 19. *See* Appendix "A."

are clearly erroneous if the record fails to disclose any facts in evidence or any reasonable inferences from the evidence in support of the findings. In making this determination, the evidence will not be reweighed. The trial court's decision will be reversed only where the evidence, viewed most favorably to the judgment, undisputably requires a conclusion to the contrary. *Hrisomalos v. Smith* (1992), Ind.App., 600 N.E.2d 1363, 1366.

In its findings, the trial court found the racial covenants to be unenforceable and redacted them from the deeds. However, it enforced the remaining restrictions as part of a general scheme or plan of development for residential use. The plaintiffs contend this was in error. Specifically, they claim the racial covenants cannot be redacted without disturbing the underlying intent of the grantors. Plaintiffs further argue that because the inclusion of the unenforceable covenants within several of the deeds poison the remaining covenants, no restrictions on Christiana Acres should be upheld because they violate public policy.

Restrictive covenants which restrict use of land based on race are unconstitutional. *Shelley v. Kraemer* (1948), 334 U.S. 1, 23, 68 S.Ct. 836, 847, 92 L.Ed. 1161, 1186. Thus, undisputably, the racial restrictions contained in the deeds are invalid. However, as the defendants point out, restrictive covenants are express contracts between a grantor and grantee. *Campbell v. Spade* (1993), Ind.App., 617 N.E.2d 580, 584. Accordingly, as in other contracts, illegal covenants may be removed if to do so will not affect the intent or symmetry of the remaining covenants. *Brokaw v. Brokaw* (1980), Ind.App., 398 N.E.2d 1385, 1388.

Racial restrictions aside, it is evident that the other residential covenants seek to independently ensure the residential quality of Christiana Acres. They do this by setting forth very specific set-back and minimum value requirements, by prohibiting certain commercial and trade behavior, and by imposing restrictions against certain temporary residential structures. As the trial court noted in its findings, severing the illegal racial covenants only destroys a small portion of

the covenants' intent. It does not affect the prevailing and apparent intent to have Christiana Acres remain residential. Consequently, the trial court did not err in redacting the illegal covenants while allowing the others to remain intact.

Plaintiffs next contend the trial court erred in finding a general scheme or plan of residential development to exist in Christiana Acres. In support of their argument, plaintiffs argue that some of the covenants are ambiguous, and point out that many of the deeds are not identical in their restrictions, that some properties do not have restrictions on them at all, and that several lots were conveyed without restrictions before the plat was recorded.

However, the lack of uniformity in restrictions in a subdivision does not conclusively prove the nonexistence of a general plan or scheme for residential development. *Elliot v. Keely* (1951), 121 Ind.App. 529, 539–540, 98 N.E.2d 374, 379, *trans. denied.* Nor does the fact that some of the lots contain no restrictions, that a few lots were conveyed before the plat was recorded, or that the recorded plat itself contains no restrictions, conclusively show the nonexistence of such a plan. *See id.; Bachman v. Colpaert Realty Corp.* (1935), 101 Ind.App. 306, 319, 194 N.E. 783, 789 (mere fact appellant's title record did not show general scheme of development did not prevent its enforcement).

Instead, in determining whether a general scheme or plan of development exists, the pertinent focus is on whether the circumstances and facts of the case, including the language of the deeds and the grantors' actions, reveal an intent by them to create such a plan or scheme. *Elliot* at 539, 98 N.E.2d at 379. As this Court specifically explained in *Elliot,*

> "[w]here a common grantor opens up a tract of land to be sold in lots and blocks, and before any lots are sold, inaugurates a general scheme of improvement for such entire tract intended to enhance the value of each lot, and each lot subsequently sold by such grantor, is made subject to such scheme of improvement, there is created and annexed to the entire tract what is

termed a negative equitable easement, in which the several purchasers of lots have an interest, and between whom there exists mutuality of covenant and consideration."

(Citations omitted.) The *Elliot* Court further stated,

"The failure of the developer to include uniform restrictions in all deeds, or his failure to include any restrictions in one or more deeds, would not of itself take away all of the rights of the other purchasers to have the district maintained as a restricted residential district. If [such a] proposition is correct then a sub-divider might sell hundreds of lots for enhanced prices, upon the representation that the district was to be a restricted residential district, and then by his failure either through inadvertence or otherwise, to include such restrictions in one or more deeds, destroy the entire scheme or general plan for a restricted residential sub-division. We are of the opinion that a general plan or scheme may exist, although some of the lots were sold without restrictions."

(Citations omitted). *Id.* at 540, 98 N.E.2d at 379.

In 1946, the plat was recorded. At that time, all the owners maintained their properties strictly for residential use. Also, each property owner joined in the recording. In doing so, it is reasonable to infer that the owners all intended to combine in their efforts to develop Christiana Acres as a residential neighborhood. By making Christiana Acres exclusively residential, it is also inferable that the common grantors wished to enhance the value of their lots to the benefit of all others in the subdivision.

■ At present, every owner can trace their properties to this common source beginning in 1946. Moreover, a review of the deeds in aggregate reveals an unmistakable intent to place residential restrictions on the properties and the subdivision as a whole. *See Enderle v. Sharman* (1981), Ind.App., 422 N.E.2d 686, 694–695. After the initial recording, although not identical, lots were consistently transferred with various residential restrictions. Among these were: that "all lots shall be known and described as

residential lots ...;" that "no building shall be erected on any residential building plot ..." within a prescribed distance from property lines; that "no residential structure shall be erected or placed on any building lot ..." over certain lot size standards; and that "no noxious or offensive trade or activities shall be carried on upon any lot...." Based on this evidence, there is no clear error in the trial court's conclusion that the residential restrictions on Christiana Acres are enforceable as a general plan or scheme of development.

Next, plaintiffs complain that because there has been significant commercial development along Cassopolis Road in recent years, the continued residential nature of Christiana Acres is no longer feasible. The facts, however, indicate a conclusion to the contrary.

■ It is only where the use of the property and the surrounding area has so radically changed from what was originally envisioned making the covenants no longer sustainable, that they will be lifted as unenforceable. *See Burnett v. Heckelman* (1983), Ind. App., 456 N.E.2d 1094, 1097. In this analysis, the equities of must be viewed to determine if they favor dismantling of the neighborhood restrictions. *Id.*

■ Plaintiffs' unilateral speculation that their properties are worth more if developed commercially is insufficient by itself to nullify the otherwise valid covenants for residential use. *Id.* at 1098–1099. Also, the residential integrity of Christiana Acres has remained unchanged for almost fifty years. Since 1946, nothing but single family homes have occupied the land. Additionally, all lots in the subdivision are presently zoned exclusively for residential use. *Cf. Bachman* at 319–320, 194 N.E. at 789 (residential restrictions upheld although zoning classification changed to commercial use). Throughout the years, the homeowners have successfully defeated attempts to have this classification changed. The most recent home was built within three years preceding the commencement of this lawsuit. Some defendants stated they had purchased their homes during the last several years relying on the contin-

ued residential character of the neighborhood. Consequently, the record does not support plaintiffs' contention that it is no longer practical to maintain the subdivision as a residential neighborhood.

A review of the findings and conclusions do not undisputably support a conclusion contrary to the one reached by the trial court. There being no finding of clear error, the decision of the trial court is affirmed.

Affirmed.

GARRARD and FRIEDLANDER, JJ., concur.

## APPENDIX A