Owen HARBOUR, Appellant/Defendant,

v.

ARELCO, INC., d/b/a National Car Rental Systems, Appellee/Plaintiff.

No. 11S04–9703–CV–202.

Supreme Court of Indiana.

March 19, 1997.

John Christopher Wall, Scott M. Kryouac, Wilkinson, Goeller, Modesitt, Wilkinson & Drummy, Terre Haute, for Appellant/Defendant.

David O. Thomas, John J. Thomas, Thomas & Thomas, Brazil, William K. Byrum, Stark, Doninger & Smith, Indianapolis, for Appellee/Plaintiff.

## ON PETITION TO TRANSFER

BOEHM, Justice.

This case arises under Indiana Code § 24–4–9, a consumer protection statute regulating motor vehicle rentals ("Vehicle Rental Act"). We conclude that portions of the car rental contract used in this case do not conform to the Act and therefore, as the Act provides, are unenforceable.

### Factual and Procedural History

On March 2, 1991, Owen Harbour rented a 1991 Mercury Grand Marquis from Arelco, Inc., d/b/a National Car Rental Systems, in Terre Haute, Indiana. The agreement between the two parties consisted of three documents: 1) a two-page document entitled "Amendment to Terms and Conditions of Rental Agreement," ("Rental Agreement") which included fifteen subsections of rental terms and conditions; 2) an "Indiana Disclosure Notice"; and 3) an "Additional Authorized Driver Addendum to Rental Agreement." Harbour elected to purchase a "Collision/Loss Damage Waiver" that, in general, relieved him of liability for damage to the vehicle, and creates issues discussed below. Harbour also listed James Reed as an additional authorized driver on the Additional Authorized Driver Addendum. Reed drove the vehicle to Texas where it was reduced to a total loss. According to a Texas grand jury indictment, Reed was charged with criminal mischief, a third degree felony, for knowingly and intentionally damaging the vehicle by "striking said vehicle into a pickup truck."

Upon learning of the damage to the vehicle, Harbour requested that Arelco turn the matter over to his insurance company. Arelco was unable to reach an agreement with that company and proceeded to sue Harbour, alleging that Reed damaged the vehicle by actions that violated the terms of the contract and that under the terms of the contract Harbour was responsible for the damage. Arelco moved for partial summary judgment contending that: 1) under the contract Harbour was liable for Reed's damage notwithstanding the damage waiver; 2) Harbour's counterclaims were without merit; and 3) the contract provided for Arelco to recover its attorney fees. Harbour filed his own motion for summary judgment asserting that: 1) the contract terms that voided the damage waiver were unenforceable because they failed to comply with the Vehicle Rental Act; and 2) even if some provisions were enforceable, the Act prohibited Arelco's recovery of attorney fees.

After a hearing, the trial court granted partial summary judgment in favor of Arelco

determining that: 1) the contract complied (or substantially complied) with the Act; 2) the damage waiver was inapplicable because the authorized driver engaged in a "prohibited use" of the vehicle; and 3) Harbour was responsible for the loss by the terms of the contract. The trial court also granted partial summary judgment in favor of Harbour, holding that Arelco was not entitled to attorney fees pursuant to Section 13 of the Act. The trial court certified the trial court's interlocutory order for appeal and the Court of Appeals accepted jurisdiction. In an unpublished memorandum decision, the Court of Appeals affirmed the trial court. *Harbour v. Arelco, Inc.*, 656 N.E.2d 558 (Ind.Ct.App. 1995) (mem.). Harbour now seeks transfer to this Court.

### I.  Indiana's Vehicle Rental Act

This interlocutory appeal deals with the effect of two contractual provisions. The first prohibits the use of the vehicle "for any illegal purpose" or "in any abusive or reckless manner or if convicted of careless driving," and voids the collision damage waiver for losses incurred as a result of prohibited activity. The second provides for the rental company to recover attorney fees in case of a breach. Harbour argues Arelco cannot enforce either provision against him because neither conforms to the Vehicle Rental Act. This law was enacted by the Indiana Legislature in 1989 to regulate the practices of motor vehicle rental companies. It is clear from the plain language of the statute that a major thrust of the Act is to protect consumers from being misled or given inadequate information when renting a car. Indeed, Section 24 of the Act provides that a violation of the Act is also a deceptive act that triggers the sanctions of Indiana's Deceptive Consum-

er Sales Act. IND.CODE § 24–5–0.5 (1993 & Supp.1995).

In this case, it is undisputed that Harbour purchased a collision damage waiver. Under a collision damage waiver, the rental company agrees to waive claims against the renter for damage to the rented vehicle. The Act deals specifically with collision damage waivers. It allows rental companies to offer and sell the waiver for a separate charge under certain conditions set forth in Section 10(a). Section 9 limits the circumstances in which the rental agreements may provide that the collision damage waiver does not apply. Section 10(b) requires that specific information be disclosed to the renter. If the contract does not "conform" to the statutory requirements, Section 19 provides that it is "unenforceable."

### II.  Arelco's Disclosures and Harbour's Acknowledgment Do Not Comply with the Act

First, we address the collision damage waiver restrictions. In order to establish Harbour's liability, Arelco relies upon that fact that Reed used the vehicle in violation of the "prohibited use" section of the Rental Agreement. That section provides if the renter or an authorized driver engages in a prohibited use of the vehicle, the collision damage waiver is not applicable. We assume for these purposes that Reed's operation of the vehicle was within the Rental Agreement's definition of "prohibited use." Section 10(b)(4)[1] of the Act imposes precise requirements on the manner in which rental companies disclose any restrictions on the collision damage waiver. It states: "Each rental agreement that contains a collision damage waiver must disclose the following

---

1.  Indiana Code § 24–4–9–10(b) reads in its entirety:

    (b) Each rental agreement that contains a collision damage waiver must disclose the following information in plain language printed in type at least as large as 10 point type:
    (1) That the waiver is optional.
    (2) That the waiver entails an additional charge.
    (3) The actual charge per day for the waiver.
    (4) All restrictions, conditions, and provisions in or endorsed on the waiver.
    (5) That the renter or other authorized driver may already be sufficiently covered for damage

to the rental vehicle and should examine the renter's or authorized driver's automobile insurance policy to determine whether the policy provides coverage for collision damage, loss, or loss of use to a rented vehicle, and the amount of the deductible.
    (6) That by entering into the rental agreement, the renter may be liable for damage, loss, or loss of use to the rental vehicle resulting from a collision.

    We cannot determine from the record, but assume, that the type-size requirements were met by the documentation.

information in plain language printed in type at least as large as 10 point type ... [a]ll restrictions, conditions, and provisions in or endorsed on the waiver." Section 10(c) [2] also requires that the renter acknowledge these disclosures "on the rental agreement." The only document relevant to this issue [3] that was signed by Harbour was an "Indiana Disclosure Notice" that in its entirety stated:

National Car Rental                                    Indiana Disclosure Notice

If I enter into this Agreement and if I am involved in an accident or the car sustains damage, even from unknown causes, I am responsible for the resulting damages including loss of use, claims processing fees and administrative charges regardless of fault. This financial responsibility is eliminated if I accept the [Collision/Loss damage waiver] Option, pay for it, and comply with the Agreement, including all Terms and Conditions.

I understand that you offer an optional Collision/Loss damage waiver for an additional charge of $5.00 per full or partial day. I further understand that I should examine my or the Authorized Driver's automobile insurance policy to determine whether the policy provides coverage for collision damage, loss or loss of use to the rented vehicle, and the amount of the deductible. I understand that I may already be sufficiently covered for damage to the rental vehicle by insurance; that you cannot interpret the terms of my insurance policy; that it is my responsibility to check with my insurance agent.

I have read and understand the Disclosure Notice and all restrictions, conditions and provisions of the Collision/Loss damage waiver contained in the Amendment to the Rental Agreement.

Customer Signature ___/s/ Owen Harbour___ Date ___3-2-91___

At the time he rented the vehicle, Harbour also received a separate "Amendment to Terms and Conditions of Rental Agreement" detailing the terms and conditions of the contract. This document contained more than fifteen subsections of terms and conditions. Section Five of the Rental Agreement listed eleven prohibited uses of the vehicle and Section Seven contained three paragraphs dealing with the collision damage waiver option. The prohibited uses on which Arelco relies to establish Harbour's liability are not set forth in the Disclosure Notice. Arelco attempted to incorporate the prohibited uses into the Disclosure Notice via the last paragraph of the Notice quoted above. Arelco left it to the renter to search out the limitations on the collision damage waiver. Ultimately, the renter must find Section Five of the Rental Agreement, which discusses "prohibited uses" whether or not the renter purchases a collision damage waiver. The waiver is discussed in Section Seven, but that section does not include the prohibited uses. Nor does it include a specific reference to Section 5. Rather Section 7 simply states that the renter must "comply with this Agreement, including all Terms and Conditions."

■ Arelco argues that Harbour appropriately acknowledged the prohibited uses because he "signed the Indiana Disclosure Notice which specifically addressed the prohibited uses." The statement that the renter must "comply with the Agreement, including all Terms and Conditions" is not enough to advise the renter of the terms of the waiver's restrictions. At best, it makes clear that there are some restrictions, but does not spell out what they are. The Disclosure Notice is the only relevant document bearing Harbour's signature. The Rental

2. Indiana Code § 24-4-9-10(c) reads in its entirety:

 (c) A rental company may not rent a vehicle to a renter until the renter has acknowledged in writing that the renter understands the information set forth in subsection (b). The acknowledgment must be written in plain lan- guage on the rental agreement and must be initialed by the renter.

3. Harbour also signed an "Additional Authorized Driver Addendum" and a printout indicating the potential charges and method of payment and a statement that "I have received and agree to the terms and conditions of this rental agreement."

Agreement was not signed or initialed by Harbour. Because Arelco relies upon the Rental Agreement's prohibited uses to establish Harbour's liability and Harbour did not acknowledge "on" that document, the contract fails to meet Indiana's statutory requirements. IND.CODE § 24-4-9-10(c) (1993). This is no mere quibble. The point of the statute is to rub the consumer's nose in any qualifications on the waiver. That is not accomplished when the consumer signs one document but would have to read another two-page, fifteen-section agreement, in, at best, ten-point type to figure out what the restrictions and conditions on the waiver may be.

The underlying goal of this statute is to protect consumers. The Legislature intended that any waiver limitations be disclosed in a way that causes renters to grasp the effect of those limitations. It specifically required that the written acknowledgment be "on the rental agreement" and that the "rental agreement" include "all restrictions" on the waiver. IND.CODE § 24-4-9-10 (1993). Although an attorney may be able to wade through the several subsections and put all these pieces together, the Legislature did not intend to put that burden on an ordinary consumer renting a vehicle in the middle of the night in a snowstorm in a strange locale. By requiring renters to wander through several subsections of two separate documents in order to determine the limitations of the collision damage waiver, Arelco has failed to comply with the statute's requirements.

Because the restrictions on the collision damage waiver do not conform to Indiana law, they are unenforceable and Arelco cannot establish Harbour's liability under the contract. Therefore, we remand to the trial court with instructions to vacate the portion of its order granting partial summary judgment in favor of Arelco and to enter partial summary judgment in favor of Harbour.

## III. The Attorney Fees Provision is Unenforceable

Both parties moved for summary judgment on the issue of enforceability of the attorney fees provision in the Rental Agreement. Harbour argued that because attorney fees were not allowed under the statute, the entire contract was unenforceable.[4] We agree with the Court of Appeals that the attorney fees provision is unenforceable because Section 13 of the Act restricts the items for which a renter may be liable and does not authorize recovery of attorney fees.[5] We briefly address this issue to note that inclusion of this provision, by itself, did not render the entire contract invalid. Generally, a contract made in violation of a statute is void. *See Continental Basketball Assoc. v. Ellenstein Enter.*, 669 N.E.2d 134, 139-40 (Ind.1996). However, if a contract contains an illegal provision which can be eliminated without frustrating the basic purpose of the contract, the court will enforce the remainder of the contract. *Corner v. Mills*, 650 N.E.2d 712, 715 (Ind.Ct.App.1995) (citing *Brokaw v. Brokaw*, 398 N.E.2d 1385, 1388 (Ind.Ct.App. 1980)). We agree with the Court of Appeals that the primary purpose of the contract is not frustrated by eliminating the attorney fees provision. If the contract had conformed with the statutory requirements, the inclusion of the attorney fees provision alone would not have rendered the entire contract unenforceable. Here, the trial court properly granted partial summary judgment in favor of Harbour by determining the Act does not allow Arelco to collect attorney fees.

## IV. Interlocutory Appeal

Finally, we note that the Court of Appeals declined to address "*issues* asserted by Harbour that were not certified for interlocutory appeal." *Harbour v. Arelco, Inc.*, No. 11A04-9407-CV-298, 656 N.E.2d 558, slip op. at 12 (Ind.Ct.App. Oct.19, 1995) (em-

4. We note that the Court of Appeals determined that Harbour waived this issue because he raised it for the first time on appeal. Harbour's Brief in Support of Defendant's Motion for Summary Judgment, which is included in the record on appeal, clearly illustrates that this argument was presented to the trial court, and thus, was not waived on appeal.

5. Indiana Code § 24-4-9-13 states: "[a] rental company and renter may agree that the renter will be responsible for *no more* that all of the following ...." (emphasis added). Attorney fees are not listed among the many types of recoveries listed.

phasis added). Indiana Appellate Rule 4(B) provides that "appeal from interlocutory *orders* shall be taken in the following cases . . . ." (emphasis added). The rule does not require or even permit certification of particular issues. Rather it requires certification of an interlocutory order. Harbour properly petitioned the trial court "For Certification of Appeal of Interlocutory Order." The trial court then properly certified its February 1, 1994 summary judgment order for review. Any issues that were properly raised in the trial court in ruling on the trial court's summary judgment order are available on interlocutory appeal. Because the trial court's order is reversed and Harbour is entitled to partial summary judgment, we need not address the issues presented by Harbour that the Court of Appeals deemed waived.

### Conclusion

In sum, the trial court relied upon contractual provisions that are contrary to Indiana law in granting partial summary judgment for Arelco. We grant transfer and remand to the trial court with directions to enter partial summary judgment on behalf of Harbour consistent with this opinion.

SHEPARD, C.J., and DICKSON and SELBY, JJ., concur.

SULLIVAN, J., dissenting, would deny transfer, believing the result reached by the Court of Appeals in this case was correct.