

FILED

Jan 09 2024, 9:18 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Indiana Supreme Court

Supreme Court Case No. 23S-CT-182

## Jennifer Pennington and Joshua Pennington,
*Appellants/Cross-Appellees (Plaintiffs below)*

–v–

## Memorial Hospital of South Bend, Inc., d/b/a Beacon Health and Fitness,
*Cross-Appellant (Defendant below),*

## Spear Corporation, and Panzica Building Corporation,
*Appellees (Defendants below).*

---

Argued: October 10, 2023 | Decided: January 9, 2024

Appeal from the St. Joseph Superior Court
No. 71D04-1804-CT-160
The Honorable Cristal C. Brisco, Judge

On Petition to Transfer from the Indiana Court of Appeals
No. 22A-CT-1573

---

**Opinion by Justice Goff**

Chief Justice Rush and Justices Massa, Slaughter, and Molter concur.

**Goff, Justice.**

Landowners have a duty to exercise reasonable care for the protection of invitees on their premises. This duty generally requires the landowner to protect invitees against foreseeable risks of harm. Our foreseeability analysis varies, however, depending on whether a case involves a dangerous condition on the premises or whether it involves a dangerous activity. Today's case, arising from an injury suffered by a swimmer who collided with the corner of a swimming-pool wall, implicates the pool's allegedly dangerous condition. Finding some evidence that the risk of harm was foreseeable, we deem summary judgment for the pool operator unwarranted. However, we affirm summary judgment for the pool's architects.

## Facts and Procedural History

Memorial Hospital of South Bend, doing business as Beacon Health and Fitness (or just Beacon), owns and operates a health and fitness center in Granger, Indiana. The Panzica Building Corporation acted as the principal architect and designer for the center. Panzica subcontracted with the Spear Corporation to design the center's swimming pool. This pool, rectangular and seventy-five feet long, was built to serve multiple purposes, including lap-swimming and aquatic fitness. We include the following image of the pool, drawn from the record, for illustration.



Along one side of the pool, a long ramp descends into the water, enabling disabled users to enter the pool. A concrete "wing-wall," built within the pool itself, sets off the ramp from the main swimming area. At the bottom of the ramp, a gap twenty-two feet, six inches long opens in the wing-wall. Continuing on past this gap, one reaches a second, shorter stretch of wing-wall flanking a set of entry steps at the end of the pool. The pool was designed so that the tops of the wing-walls would sit at the water level, which was maintained by an automatic mechanism. When the pool was opened, the wing-wall ends lacked padding and no floating lane-divider was laid across the gap. Pennants were, however, strung above and across the width of the pool approximately fifteen feet from each end.

During the first week of the pool's operation in November 2016, Dr. Jennifer Pennington visited and swam several laps of various strokes in the lane adjacent to the wing-walls. After transitioning from freestyle to backstroke, her head collided with the corner of the wing-wall by the entry steps, causing her injury.

Dr. Pennington and her husband, Joshua Pennington, subsequently filed suit against Beacon, Panzica, and Spear (collectively, the Defendants), alleging numerous claims. Counts I and II charged all three Defendants with defective design and failure to warn. Count III accused Beacon of negligent maintenance and operation, including allegations of inappropriate water levels, lack of guidance aids and safety features, and failure to warn or instruct. Count IV, in turn, subjected Panzica and Spear to allegations of negligent construction. Finally, Count V charged all three Defendants with depriving Joshua Pennington of his wife's services and companionship due to the injury.

Following discovery, the Defendants asked the trial court to bar the opinion of the Penningtons' expert, Dr. Thomas Sawyer; to strike other items of evidence, including post-accident photographs of the pool and an email sent by Panzica's president; and to grant them summary judgment. The trial court restricted Dr. Sawyer's opinion in part—allowing his testimony on matters related to swimming-pool management and operations while excluding it insofar as it concerned design and construction. The court then struck the email, photographs, and other items of evidence and granted summary judgment to Panzica and Spear on all counts and to Beacon on Counts I and II. (The Penningtons conceded Count IV at the summary-judgment hearing.) On Count III, negligent maintenance and operation, the trial court granted Beacon partial summary judgment, finding no issues of fact related to the level of the water or a duty to provide guidance aids and safety features. However, the trial court partially denied summary judgment as to Beacon's failure to provide adequate warnings and instructions. Finally, the court denied summary judgment to Beacon on Count V insofar as it derived from the maintenance-and-operation claim.

Spear moved the trial court to enter final judgment in its favor under Indiana Trial Rule 54(B). After the court granted this motion, the Penningtons appealed the summary judgments entered in favor of both Spear and Panzica. Beacon also sought certification of a discretionary interlocutory appeal under Indiana Appellate Rule 14(B), which the trial court granted and the Court of Appeals accepted. The Penningtons used their brief in response to Beacon to raise cross-appeal issues of their own. The Court of Appeals consolidated the two appeals and affirmed the trial

court in a published opinion. *Pennington v. Mem'l Hosp. of South Bend, Inc.*, 206 N.E.3d 473, 477 (Ind. Ct. App. 2023). In affirming the partial denial of summary judgment to Beacon on Count III, the panel analyzed the foreseeability of harm by applying the test appropriate for activities conducted on the premises. *Id.* at 487–88.

Beacon sought transfer to this Court, which we granted, thus vacating the Court of Appeals' decision. *See* Ind. Appellate Rule 58(A).

## Standards of Review

Summary judgment is appropriate "if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C). The movant has the "initial burden" of demonstrating "the absence of any genuine issue of fact as to a determinative issue." *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014) (internal quotation marks and citation omitted). It is not enough for the movant to show that "the party carrying the burden of proof *lacks* evidence on a necessary element." *Id.* Rather, they must "affirmatively negate" the opponent's claim. *Id.* (internal quotation marks and citation omitted). Only then must the non-movant "come forward with contrary evidence showing an issue for the trier of fact." *Id.* (internal quotation marks and citation omitted). We review summary judgment de novo, drawing all reasonable inferences in the non-movant's favor. *Id.* (internal citation omitted). However, the trial court's decision to admit or strike evidence at the summary-judgment stage is reviewed for an abuse of discretion. *Williams v. Tharp*, 914 N.E.2d 756, 769 (Ind. 2009).

## Discussion and Decision

Our analysis begins in Part I by clarifying that all issues raised on summary judgment are available for our review in this interlocutory appeal. In Part II, we review the trial court's exclusion of the Penningtons' evidence and affirm the grant of summary judgment in favor of the architects Spear and Panzica as to their roles in the pool's design. In Part III, we first explain why the Penningtons' claim of negligent maintenance

and operation against Beacon requires analysis of a condition—rather than activities—on the premises. We then conclude that summary judgment was unwarranted on the operational claim (except on one specific issue within the claim). Finally, in Part IV, we address the design claim against Beacon and reverse summary judgment.

# I. All summary-judgment issues are available in this interlocutory appeal.

The appeals in this case have become somewhat entangled, prompting us to restate the proper appellate procedure under Trial Rule 54(B) and Appellate Rule 14(B).

Appellate jurisdiction "'is generally limited to appeals from final judgments.'" *Ramsey v. Moore*, 959 N.E.2d 246, 251 (Ind. 2012) (quoting *Allstate Ins. Co. v. Fields*, 842 N.E.2d 804, 806 (Ind. 2006)). A judgment typically becomes final when it "dispose[s] of all issues as to all parties, ending the particular case and leaving nothing for future determination." *Id.*; App. R. 2(H)(1). But there are other ways in which a judgment may become final. *See* App. R. 2(H)(2)–(5).

An order is also a "final appealable judgment" when "'the trial court in writing expressly determines under Trial Rule 54(B) [that] there is no just reason for delay and in writing expressly directs the entry of judgment … under Trial Rule 54(B) as to fewer than all the claims or parties.'" *Ramsey*, 959 N.E.2d at 253 (quoting App. R. 2(H)(2)). Trial Rule 54(B) thus allows for the immediate perfection of an appeal without the need for final judgment as to all claims or parties. To obtain an appeal under Trial Rule 54(B), the trial court must certify its order using "'the magic language of the rule.'" *Id.* (quoting *Georgos v. Jackson*, 790 N.E.2d 448, 452 (Ind. 2003)). Depending on how the trial court frames its certification, the "magic language" may apply to "only one portion of the order." *See id.*

Here, the trial court's Trial Rule 54(B) certification order found "no just reason for delay" and granted "Defendant Spear Corporation's Motion for Summary Judgment as a final and appealable Order." App. Vol. II, p. 71. The order thus applied the "magic language" to the judgment in favor of

Spear alone, permitting the Penningtons to immediately appeal the judgment for Spear—but not the judgment entered for Panzica.

That's not all, however. This case also involves Beacon's interlocutory appeal pursuant to Appellate Rule 14(B). That rule allows for certification of interlocutory orders (as opposed to judgments) for appeal. *See* App. R. 14(B). Appellate Rule 14(B), we've emphasized, "requires certification of an interlocutory order," not just "particular issues." *Harbour v. Arelco, Inc.*, 678 N.E.2d 381, 386 (Ind. 1997). Thus, "[a]ny issues that were properly raised in the trial court in ruling on the trial court's summary-judgment order are available on interlocutory appeal." *Id.*[1]

Here, Beacon moved the trial court for "an order certifying for interlocutory appeal that part" of its summary-judgment order "denying Beacon's motion for summary judgment." Motion To Certify Order For Interlocutory Appeal, Pennington v. Mem'l Hosp., No. 71D04-1804-CT-000160 (St. Joseph Sup. Ct. July 8, 2022). The Penningtons then filed a notice that they had no objection. The trial court granted Beacon's motion, stating that it was certifying only that part of its order partially denying summary judgment to Beacon. Beacon then moved the Court of Appeals to accept jurisdiction of the same limited issue and that motion was granted.

This manner of proceeding improperly purported to certify a specific issue rather than the interlocutory order as a whole. The question arises, then, whether the entire order is now subject to our review or only the one issue. In *Budden v. Board of School Commissioners of the City of Indianapolis*, this Court faced a similar issue. *See* 698 N.E.2d 1157, 1165–66 & n.14 (Ind. 1998). In that case, the trial court certified its interlocutory order and five specific questions. *Id.* at 1165. We held that the "net effect" was simply to "identify the issue that constitutes a 'substantial question of law'

---

[1] We implied in *Coca-Cola Co. v. Babyback's International, Inc.* that only "the issues certified for interlocutory appeal" are available for review. 841 N.E.2d 557, 561 n.2 (Ind. 2006). However, we returned to the *Harbour* rule in *Curtis v. State*, 948 N.E.2d 1143, 1147 (Ind. 2011). *See* William A. Ramsey, *Appealing Orders Before A Case Ends: Dos, Don'ts And Modest Proposals*, 56 *Res Gestae* 13, 22 n.30 (Dec. 2012) (discussing these inconsistencies). For clarity, we now disapprove the approach taken in the *Coca-Cola* footnote.

presented by the order." *Id.* at 1165–66 n.14 (quoting former App. R. 4(B)(6)). We reach the same result today and conclude that when a trial court purports to certify an "issue," it implicitly certifies the entire order and merely identifies a "substantial question of law" that calls for "early determination." *See* App. R. 14(B)(1)(c)(ii). The error is "inconsequential" so long as "it is clear what order is affected." *See Budden*, 698 N.E.2d at 1166 n.14.

Applying this rule, we will address all the issues stemming from the trial court's summary-judgment order and raised in these appeals: the Penningtons' appeal from summary judgment for the pool's architects, Spear and Panzica; Beacon's appeal from partial denial of summary judgment as to their operation of the pool; and the Penningtons' cross-appeal from partial summary judgment for Beacon as to its role in both operating and designing the pool.

## II. The Penningtons designated no admissible evidence that Spear or Panzica breached their professional duty of care.

A plaintiff alleging negligence must prove (1) that the defendant owed the plaintiff a duty of care, (2) that the defendant breached this duty by allowing its conduct to "fall below the applicable standard of care," and (3) that the breach "proximately caused" a "compensable injury." *Goodwin v. Yeakle's Sports Bar & Grill*, 62 N.E.3d 384, 386 (Ind. 2016) (internal quotation marks and citations omitted).

Here, the Penningtons alleged that Spear and Panzica were negligent in designing the swimming pool. In seeking summary judgment, Spear and Panzica designated the opinion of an expert swimming-pool designer and engineer, Matthew Reynolds, that it had met the standard of care in designing the pool. The Penningtons, in response, designated the opinion of Dr. Sawyer, a "Risk and Safety Management Consultant" with experience managing "aquatic facilities." App. Vol. XII, p. 51. When questioned during a deposition, Dr. Sawyer affirmed that he had no experience, education, or training in "how to engineer the design of a swimming pool" and was "not qualified to give an opinion" on the

"standard of care applicable to any architect" who may sign or stamp a design. App. Vol. III, p. 65. Based on this testimony, the trial court excluded Dr. Sawyer's evidence to the extent that it bore on swimming-pool design.

We find no abuse of discretion in this ruling as far as Spear and Panzica are concerned. An architect or design professional has been negligent if they "breached a duty to exercise the degree of competence ordinarily exercised in like circumstances by reputable members of the profession." *Smith v. Walsh Const. Co. II, LLC*, 95 N.E.3d 78, 89 (Ind. Ct. App. 2018) (internal quotation marks and citation omitted). A witness must have "familiarity with the standard of care" applicable to such trained professionals, otherwise they cannot "testify to the requisite standard of care" or any departure from that standard. *Troutwine Estates Dev. Co. v. Comsub Design & Eng'g, Inc.*, 854 N.E.2d 890, 902 (Ind. Ct. App. 2006) (concerning engineers). Generally, this means the witness must be an expert. *Id.* Here, Dr. Sawyer admitted being unqualified to speak about an architect's standard of care. The trial court reasonably concluded that he thereby excluded himself from rendering any opinion on Spear and Panzica's conduct in designing the pool.

The Penningtons also designated Exhibit 7, an email sent from the president of Panzica to executives at Spear, stating that "a condition" of the pool "expose[d]" all the Defendants to "liability for injury." App. Vol. IV, p. 217. The trial court excluded this evidence because it stated a "legal conclusion" and discussed a "subsequent remedial measure." App. Vol. II, p. 65; *see also* Ind. Evidence Rules 407, 704(b). The portion of the email discussing a remedial measure need not trouble us at this stage because it can easily be separated from the liability statement and redacted. The Penningtons argue that even if the Panzica president's remark stated a legal conclusion—which they do not contest—it was admissible under the hearsay exception for an "opposing party's statement." Appellants' Br. at 46. This exception concerns the admissibility against a party of a statement "made by the party," which here means Panzica (but not Spear). *See* Ind. R. Evid. 801(d)(2)(A). However, while party-opponent statements are "not hearsay," Ind. R. Evid. 801(d), there are other reasons for which they may not necessarily be admissible. We will not reverse the exclusion of the

email because the Penningtons have not contested the trial court's conclusion that the statement was an inadmissible legal conclusion.

Likewise, we find no abuse of discretion in the trial court's exclusion of Exhibit 12. This exhibit consisted of a set of photographs of the pool, taken more than a year and a half after Dr. Pennington's injury, showing a subsequently installed floating lane-divider and padding on the exposed end of the wing-wall. A factfinder could infer that this apparatus was added to prevent further injuries—an action that could be interpreted as an implicit admission that the pool was previously unsafe. It was proper to exclude these photographs because evidence of subsequent remedial measures cannot be used to prove negligence. Ind. R. Evid. 407. Among the policies underlying this rule is a concern that admitting such evidence would "deter a party from taking action that will prevent future injuries." *WESCO Distribution, Inc. v. ArcelorMittal Indiana Harbor LLC*, 23 N.E.3d 682, 711 (Ind. Ct. App. 2014).

Finally, we have examined the excluded Exhibit 6 (a binder of miscellaneous design materials) and the admitted evidence cited by the Penningtons in this appeal. The only item we identified that potentially created an issue of fact is Exhibit 19, containing photographs purportedly showing the pool, before it opened, with the waterline above the level of the wing-walls. Spear's vice-president, Sam Blake, admitted that the submersion of walls within swimming pools would be unsafe. However, we can find no deposition testimony or affidavit in the record on appeal establishing a foundation for Exhibit 19—only a statement by counsel for the Penningtons that the photographs were taken "prior to Opening Day" and produced by Beacon in discovery. App. Vol. XII, p. 131. As Spear and Panzica argue, this statement is not enough to establish whether the photographs truly and accurately reflect the state of the pool on the day of Dr. Pennington's injury. *See Troutwine*, 854 N.E.2d at 903.

The Penningtons' evidence fails to create an issue of fact over whether Spear or Panzica's work fell below their professional standard of care. For this reason, we affirm summary judgment in favor of Spear and Panzica.

# III. Beacon was not entitled to summary judgment on the maintenance-and-operation claim.

We turn next to Beacon's appeal from the partial denial of summary judgment on Count III as to its failure to provide warnings or instructions to swimmers. Resolution of this issue turns on whether undisputed evidence showed that the harm Dr. Pennington suffered was unforeseeable. To answer this question, we first clarify the distinction between the two tests used in premises-liability cases for the foreseeability of harm. Then, applying the test appropriate for analyzing conditions of the premises, we affirm the trial court's decision to partially deny summary judgment. Furthermore, with the exception of one specific issue, we deem Count III triable as a whole.

## A. Dr. Pennington's injury implicates the condition of the swimming pool, not activities on the premises.

A duty of care is an indispensable element of a negligence claim. Absent a duty, there can be no breach and, hence, no liability. *Goodwin*, 62 N.E.3d at 386. Whether the defendant owed the plaintiff a duty of care "is a question of law for the court to decide." *Id.* at 386–87. When "foreseeability is an element of duty," therefore, "the court must determine the question of foreseeability as a matter of law." *Id.* at 394.[2]

The parties agree that Dr. Pennington was an invitee on Beacon's premises. It is well settled in Indiana that a landowner has a duty to an invitee to "exercise reasonable care for the invitee's protection while the

---

[2] We acknowledged in *Goodwin* that the Restatement (Third) of Torts, along with a minority of states, exclude foreseeability from the court's duty analysis. 62 N.E.3d at 389–90 & n.4. One of our own pre-*Goodwin* decisions had adopted this approach, holding that the court need only make a "general determination" whether a duty of reasonable care applied in the circumstances, leaving the foreseeability of harm for the jury. *See Paragon Family Rest. v. Bartolini*, 799 N.E.2d 1048, 1053 (Ind. 2003). We opined in *Goodwin* that this was a "much too narrow" reading of the duty analysis. 62 N.E.3d at 388. And, in *Rogers v. Martin*, we explained that "including foreseeability as an element of duty" for judicial determination promotes consistency and prevents landowners becoming "the insurers of their invitees' safety." 63 N.E.3d 316, 324 (Ind. 2016) (internal quotation marks and citation omitted).

invitee is on the premises." *Rogers v. Martin*, 63 N.E.3d 316, 320 (Ind. 2016). To fix the parameters of this duty as it relates to "dangerous conditions on the land," we have adopted section 343 of the Restatement (Second) of Torts. *See id.* at 321–22, 323 (citing *Burrell v. Meads*, 569 N.E.2d 637 (Ind. 1991)). The Restatement declares:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> > (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
> >
> > (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
> >
> > (c) fails to exercise reasonable care to protect them against the danger.

Restatement (Second) of Torts § 343 (Am. L. Inst. 1965).

Under this test, foreseeability is an element of duty. The duty to exercise reasonable care extends to "an unreasonable risk of harm" that the defendant "should realize" exists and "should expect" invitees to overlook or fail to "protect themselves against." *Id.*; *see also Rogers*, 63 N.E.3d at 324 (explaining that the "foreseeability component within the landowner-invitee duty is already explicit" in Restatement section 343).

In cases involving **conditions** on the land or premises, section 343's foreseeability analysis focuses specifically on "the condition" that allegedly resulted in injury. *See* Restatement (Second) of Torts § 343. In *Griffin v. Menard, Inc.*, for example, the plaintiff was injured when a sink fell onto him out of a cardboard box. 175 N.E.3d 811, 812 (Ind. 2021). We focused on whether Menard had any "actual or constructive knowledge that **the box** was defective." *Id.* at 814 (emphasis added).

A different test applies in cases stemming from "*activities on* a landowner's premises unrelated to the premises' condition." *See Rogers*, 63

N.E.3d at 323. In the companion cases of *Rogers* and *Goodwin*, we explained that, "in the duty arena," foreseeability "involves an evaluation of (1) the broad type of plaintiff and (2) the broad type of harm." *Id.* at 325; *see Goodwin*, 62 N.E.3d at 394 (restating the same). We consider the "general class of persons of which the plaintiff was a member and whether the harm suffered was of a kind normally to be expected— **without addressing the specific facts of the occurrence.**" *Rogers*, 63 N.E.3d at 325 (citing *Goodwin*, 62 N.E.3d at 388–89) (emphasis added). In *Goodwin*, for example, the plaintiffs alleged that the defendant bar should have protected them against being shot by a patron. 62 N.E.3d at 385–86. We asked the general question whether "bar owners routinely contemplate that one bar patron might suddenly shoot another." *Id.* at 393–94.

A critical difference thus exists between the foreseeability tests for conditions and activities. The Restatement test that we use for conditions looks at whether the danger posed by the specific condition involved was foreseeable. Whereas, the *Rogers*/*Goodwin* test that we use for activities looks at whether it was foreseeable that a general class of persons to which the plaintiff belonged might suffer the general type of harm involved. This distinction makes sense in that a landowner can know the precise physical condition of their premises, but only generally foresee what conduct or behavior will occur. In today's case, it potentially makes a significant difference whether courts will consider the general foreseeability of a swimmer hitting a wall or the specific risk of injury posed by the particular wing-wall involved.

The Court of Appeals indicated that it applied the activities standard to the maintenance-and-operation claim here because "Beacon as landowner made the decisions as to what activities could be conducted within and in proximity to the gap and with what notifications," such as whether to allow backstroke in the lane with the wing-walls. *Pennington*, 206 N.E.3d at 488. We find the appellate court's framing of the Penningtons' claims less convincing than the fact that Dr. Pennington injured her head on a physical object, the wing-wall, while engaged in what is ordinarily a reasonably safe activity. *See Sturgis v. Silvers*, 296 F. Supp. 3d 981, 991 (S.D. Ind. 2017) (holding that, although the plaintiff was attending a "social gathering" at the time she was injured, her injury

stemmed from a "condition," namely the "latent instability" of a "balcony railing" that collapsed).

To distinguish between condition claims and activity claims, we focus on the substance of the claims as reflected in the complaint, summary-judgment briefs, and designated evidence. Here, Count III alleges that Beacon failed to "remedy dangerous conditions" in the pool and specifically mentions "water levels," "guidance aids," and "safety features such as floating lines and adequate padding." App. Vol. II, p. 194. The Penningtons' summary-judgment brief argues that Beacon "owed a duty of care to protect a member of its fitness club from an injury resulting from an exposed wall during normal use of its lap pool" and "failed to take adequate measures to correct the dangerous condition." App. Vol. III, p. 111. Although we can imagine circumstances where it might be difficult to disentangle conditions and activities on the land,[3] we have little trouble identifying the Penningtons' claim here as presupposing a duty to protect invitees against a dangerous physical condition. The unreasonable danger in which Dr. Pennington allegedly found herself was not merely swimming backstroke, but swimming backstroke **next to the unpadded wing-wall.** It was the placement and condition of this wing-wall that formed the basis for alleging a duty to protect. As the substance of the claim is that a condition of the premises caused an injury, the appropriate foreseeability analysis follows Restatement section 343.

We now apply the test for the foreseeability of dangerous conditions in reviewing the trial court's decision to partially deny summary judgment to Beacon on Count III.

### B. Fact issues exist as to whether Beacon owed a duty to protect invitees from striking the wing-wall.

Beacon offers two lines of argument that summary judgment on Count III was proper under Restatement section 343. First, Beacon argues that it had no actual or constructive knowledge of the wing-wall being

---

[3] For example, a person might be injured by slipping on liquid while fleeing a robbery on the premises, or by dangerous driving at a defectively signposted cross-walk.

dangerous. Indeed, it contends that, as there was no design flaw, there could be no duty to warn of a dangerous condition. Second, Beacon argues that it could have anticipated Dr. Pennington herself realizing any danger the wing-wall posed and protecting herself against it. For the reasons explained below, neither argument persuades us.

### 1. An issue of fact exists as to the foreseeability of the harm.

Beacon argues that undisputed evidence showed it lacked any knowledge, actual or constructive, that the wing-wall posed a danger to its invitees.[4] It further asserts that, as there was no design defect, there was no dangerous condition to warn Dr. Pennington about. We disagree.

In moving for summary judgment, Beacon designated two expert opinions. Engineer Matthew Reynolds opined that the pool was "reasonably safe for its intended use," and aquatics safety consultant Michael Oostman opined that there was "no reason for Beacon to warn against" swimming alongside the wing-walls. Cross-Appellant's App. Vol. II, pp. 121, 155. Beacon's experts discovered no other example of a person suffering an injury from swimming into a wing-wall, leading Beacon to characterize the likelihood of the accident occurring as "remote." Cross-Appellant's Br. at 30. Beacon also designated evidence that it relied on its architects to design a safe pool and had no awareness that the wing-walls posed a danger.

This evidence met Beacon's initial burden to show that Dr. Pennington's injury was unforeseeable. It then fell to the Penningtons to designate evidence that Beacon either did or should have foreseen the risk. In our opinion, the Penningtons carried their burden as non-movants by offering the opinion of Dr. Sawyer.

Dr. Sawyer established his credentials as an expert in the management and operation of swimming pools, having (among other things) managed

---

[4] This argument bears on Restatement section 343(a), relieving the landowner of a duty unless they "should realize that [the condition] involves an unreasonable risk of harm" to invitees.

"aquatic facilities" for over twenty-five years and taught college courses on "risk and safety management" in aquatics. *See* App. Vol. XII, p. 51. In Dr. Sawyer's opinion, Beacon understood that swimmers "would be swimming a variety of swimming strokes including the backstroke." *Id.* at 56–57. Backstroke swimmers are commonly taught, Dr. Sawyer explained, "to watch the side wall, lane lines and over-head flags to guide them to the end wall." *Id.* at 56. In his opinion, Beacon "knew or should have known that a swimmer swimming the backstroke could easily run into" the wing-wall "since there was no floating lane line divider" strung across the gap in the wall. *Id.* According to Dr. Sawyer, this is what happened to Dr. Pennington when she "got confused" by the absence of a wall on one side of her. *Id.* at 58. Dr. Sawyer stated that Beacon could have made the pool safer by providing signage warning against swimming backstroke alongside the wing-walls, lifeguards to "enforce the rules and assist" swimmers, and functioning surveillance cameras. *Id.* at 57–58. This evidence creates an issue of fact over whether Beacon should, in the exercise of reasonable care, have foreseen what happened as a matter of its operational and managerial responsibility.

Beacon attempts to avoid this conclusion by arguing that "the trial court's evidentiary ruling barring Sawyer from testifying about design defects renders speculative and insubstantial his opinion as to what Beacon could and should have done to address that condition." Cross-Appellants' Br. at 35–36. In other words, if there were no design defect, then Beacon had nothing to warn Dr. Pennington about.

Even if we were to accept Beacon's premise that there was no admissible evidence of a design flaw (which Part IV of this opinion, below, disagrees with), this argument does not persuade us.

Commentary to the Restatement explains that invitees are "entitled to expect reasonable care in the original construction of the premises," in their "present arrangement," and in their "present use." Restatement (Second) of Torts app. § 343, reporter's note to cmt. b. Even a safely designed and constructed pool is not necessarily safe as actually set up to operate in its "present arrangement" and "use." It may, as Dr. Sawyer believed, require warnings or instructions about how to use it safely. For example, warnings against diving into shallow water are a familiar sight. But we would not presume the necessity of such warnings only for

defectively constructed pools or swimming areas. *See Benton v. City of Oakland City*, 721 N.E.2d 224, 234 (Ind. 1999) (recognizing the common-law duty "to warn where diving is dangerous"). Beacon's success before the trial court on the plaintiffs' design claim did not automatically defeat the maintenance-and-operation claim.

We thus agree for the most part with the Penningtons that summary judgment was unwarranted on Count III. However, we affirm the trial court's entry of partial summary judgment on one specific issue within Count III. *See* T.R. 56(C) (authorizing trial courts to enter summary judgment "upon less than all the issues" and to designate the issues "upon which it finds no genuine issue as to any material facts"). The designated evidence does not show that Dr. Sawyer found fault with the level of water in the pool. Indeed, he stated in a deposition that he did not "know what the level of the water was" at the time of Dr. Pennington's injury. App. Vol. X, pp. 88–89. The Penningtons' evidence does not, therefore, create a triable issue over whether the level of the water contributed to the allegedly dangerous condition of the pool.

In sum, issues of fact exist as to whether Beacon's maintenance and operation of the pool fell below the standard of reasonable care, precluding summary judgment on Count III, except as to the issue of the level of the water.

### 2. An issue of fact exists as to whether the risk was known or obvious.

Beacon also argues that it owed no duty to protect Dr. Pennington because any danger the wing-wall posed was either known or obvious to her. We think that Beacon failed to carry its initial burden of establishing these facts.

Restatement section 343 implicates the invitee's own knowledge of the risk, in that the landowner's duty to protect does not arise unless they "should expect that [invitees] will not discover or realize the danger, or will fail to protect themselves against it." Restatement (Second) of Torts § 343(b). The Restatement additionally "instructs that Section 343 should be read together with Section 343A." *Roumbos v. Samuel G. Vazanellis & Thiros and Stracci, PC*, 95 N.E.3d 63, 66–67 (Ind. 2018) (citing Restatement

(Second) of Torts § 343 cmt. a). Section 343A(1) provides that a landowner "is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." Restatement (Second) of Torts § 343(A)(1).

In *Roumbos*, we explained the defendant's burden in relying on Section 343A to divest themselves of any duty to protect. A landowner must show, first, **either** that the plaintiff was "aware of the condition and appreciate[d] its danger" **or** that "the condition and the risk [were] apparent to, and would be recognized by, a reasonable person in the position of the visitor exercising ordinary perception, intelligence, and judgment." 95 N.E.3d at 67 (citing Restatement (Second) of Torts § 343A cmt. b). The landowner must then **additionally** prove that there was "no reason to believe [the plaintiff] would fail to avoid" the danger despite it being known or obvious. *Id.* at 66.

Here, Beacon designated evidence that the wing-walls were visible both from the side of the pool and to a person swimming "freestyle or breaststroke" in the adjacent lane. Cross-Appellant's App., p. 127. This falls short of what section 343A requires. Even assuming that Dr. Pennington saw the wing-walls while swimming freestyle or breaststroke, Beacon's evidence failed to show that she appreciated the danger the wing-walls posed or that a reasonable person swimming in the pool would recognize the risk. Beacon likewise failed to show that it had no reason to anticipate a backstroke swimmer becoming disorientated and colliding with the wing-wall even after recognizing the danger. For these reasons, Beacon failed to affirmatively negate Dr. Pennington's maintenance-and-operation claim.

## IV. Beacon was not entitled to summary judgment on the design claim.

Finally, the Penningtons argued on cross-appeal that Dr. Sawyer's opinion created a fact issue as to whether Beacon should have foreseen a risk while participating alongside Spear and Panzica in the design process itself. We agree that there is a triable issue of fact here.

Unlike Spear and Panzica, Beacon is not an architectural or engineering firm. So, the professional design standard of care discussed in Part II, above, is inapplicable. Rather, Beacon, as the landowner, was obligated to exercise reasonable care under Restatement section 343 in the "original construction of the premises." *See* Restatement (Second) of Torts § 343 cmt. b.[5] A landowner's duty of care applies during the design phase. *See City of Bloomington v. Kuruzovich*, 517 N.E.2d 408, 413 (Ind. Ct. App. 1987) (holding that the city owed public-park invitees "a duty to design the park safely"); *Vazquez-Filippetti v. Banco Popular de Puerto Rico*, 504 F.3d 43, 50–51 (1st Cir. 2007) (citations omitted) (explaining that a premises-liability claim based on negligent design arises when the defective property "existed in the state intended by its owner," *e.g.* "excessively steep stairways," "a balcony without a fence or guardrail," or "a busy intersection without stop signs or lights to direct traffic").

Dr. Sawyer was clearly qualified to give an expert opinion on Beacon's standard of care as an operator involved in designing the pool. Among other things, he has managed aquatic facilities; taught college courses at Indiana State University concerning the design and planning of sports facilities, including aquatic facilities; and participated in the design process for other pools, including one with wing-walls. He also familiarized himself with national and state safety standards.

Granted, Dr. Sawyer is not an architect or engineer. But Evidence Rule 702(a) doesn't require him to be. The question is whether "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Evid. R. 702(a). We have said that this standard "is a liberal one." *Escamilla v. Shiel Sexton Co., Inc.*, 73 N.E.3d 663, 677 (Ind. 2017). Here, it is evident that Dr. Sawyer's specialized knowledge and experience will assist the factfinder's evaluation of whether Beacon met its standard of care during the pool's design process. His opinion should therefore have been admitted on the design count against Beacon. Any remaining issue as to his credibility as

---

[5] The Penningtons frame Beacon's duty in the design phase only with respect to its status as landowner, without positing any independent duty arising from its alleged role as a co-designer of the pool.

an expert "may properly be left to vigorous cross-examination, presentation of contrary evidence, argument of counsel, and resolution by the trier of fact." *Tunstall v. Manning*, 124 N.E.3d 1193, 1196–97 (Ind. 2019) (internal quotation marks and citation omitted).

In Dr. Sawyer's view, Beacon acted "carelessly and negligently" in failing to appoint a "design committee/team" composed of professionals such as "an aquatic consultant/specialist (with aquatic safety expertise)" to liaise with Spear and Panzica during the design process. App. Vol. XII, pp. 54–55. An aquatic specialist, he says, would have recognized the dangerous condition, and then "the design could have been modified." *Id.* at 54. Dr. Sawyer accepts that the pool satisfied Indiana and industry standards, but in his opinion its design still constituted an unsafe "error." *Id.* at 59. This opinion creates an issue of fact concerning Beacon's alleged breach of its standard of care.

Still, Beacon repeatedly states that it "relied" on Spear and Panzica to design and build a safe pool. Cross-Appellant's Br. at 9, 21. Generally, "a principal is not liable for the negligence of an independent contractor," including a contractor who designs a facility. *See Vaughn v. Daniels Co. (West Virginia), Inc.*, 841 N.E.2d 1133, 1143 (Ind. 2006). However, there is evidence indicating that Beacon itself played a role in the design process. *See Steel v. Rust*, 830 N.E.2d 62, 69–70 (Ind. Ct. App. 2005) (distinguishing a principal's vicarious liability for the negligence of an independent contractor from liability for the principal's "own negligence"). According to the deposition of Sam Blake, Spear's vice-president, it was Beacon who "wanted the ramp and the steps." App. Vol. III, p. 178. And Alan Loyd, a Beacon representative, was "part of the discussions" about how the pool would be designed, which included discussion of the wing-wall. *Id.* Therefore, the evidence does not utterly foreclose the possibility that Beacon, in the exercise of reasonable care, should itself have discovered and remedied the allegedly dangerous condition during the design phase.

## Conclusion

The trial court correctly entered summary judgment for Spear and Panzica. However, Beacon was not entitled to summary judgment on any count, except as to the single issue of the level of the water within Count

III. Accordingly, we affirm in part, reverse in part, and remand for trial of all the Penningtons' claims against Beacon.

Rush, C.J., and Massa, Slaughter, and Molter, JJ., concur.

ATTORNEYS FOR APPELLANTS/CROSS-APPELLEES JENNIFER PENNINGTON AND JOSHUA PENNINGTON
James P. Barth
Daniel H. Pfeifer
Peter D. Hamann
Ryan G. Milligan
Jeffrey J. Stesiak
Pfeifer Morgan & Stesiak LLP
South Bend, Indiana

ATTORNEYS FOR CROSS-APPELLANT MEMORIAL HOSPITAL OF SOUTH BEND
Louis W. Voelker
Kyle G. Grothoff
Eichhorn & Eichhorn, LLP
Hammond, Indiana

ATTORNEYS FOR APPELLEE SPEAR CORPORATION
Beverly J. Mack
Huelat & Mack, P.C.
LaPorte, Indiana

Lyle R. Hardman
Hunt Suedhoff Kearney LLP
South Bend, Indiana

Scott A. Ruksakiati
Tyson & Mendes
Chicago, Illinois

ATTORNEYS FOR APPELLEE PANZICA BUILDING CORPORATION
Martin J. Gardner
Andria M. Oaks
Christopher J. Uyhelji

Gardner & Rans, P.C.
Granger, Indiana